Tilghman C. J.
The plaintiffs, Alexander 31‘Ferrari and others, children of Samuel 31‘Ferran deceased, made title to the land in dispute as follows: On the 3d April, 1769, a location was entered in the name of William Hunter. On the 5th June, 1770, a survey was made on this location, but not on the land described in it. The surveying fees were paid by Jonathan Smith, and on the face of the draft of survey was written “ Jonathan Smith in right of William Hunter.” On the 22d May, 1772, William Hunter executed a deed poll to Jonathan Smith, which was not recorded, and on the 10th January, 1776, J. Smith made a deed to Samuel 31‘Ferran, which was not recorded. Samuel M‘Ferran died intestate in the year 1790, leaving issue the plaintiffs who at that time were infants.
The defendants claim under Robert Smith brother of Jonathan Smith, who died intestate and without issue in the year 1776, leaving two brothers Robert and James, and one sister who was married to James M‘Dowell. The defendants gave in evidence a deed from William Hunter to Robert Smith for the land in dispute, dated 15th July, 1790, recorded 26th November, 1813, and articles of agreement between the said Robert Smith and Daniel M‘Millan, for the sale of the said land, dated 10th March, 1792. They then deduced the title by sundry conveyances to themselves, and proved that they had been in possession since the year 1792, and made valuable improvements without notice of the plaintiff’s claim, till about the time of the commencement of this suit, which was in the year 1810. There was no positive.proof at what time the survey was returned to the office of the Surveyor General: but both plaintiffs and defendants claimed under it. This is a very short abstract of the evidence, which was long and complicated^ The verdict was for the plaintiffs. The defendants took an exception to the Court’s opinion on the admission of evidence, and also to the charge to the jury.
*46 The evidence excepted to was the deed from J. Smith to Samuel M'Ferran. The subscribing witnesses to this deed were Owen Williams and James Beat/. It was proved, that Owen Williams was dead, and that the name subscribed was his hand-writing: and that no such person as the other subscribing witness could be heard of, although diligent search had been made. Upon this evidence the Court suffered the deed to be read to the jury, leaving it to them to decide, whether it was proved to their satisfaction. There cannot be a doubt but the opinion of the Court was correct. It is provided by the 6th section of the act of 18th March, 1775, that where the grantors and witnesses of any deed are deceased, or cannot be had, it shall be lawful for a justice of the peace of the county where the lands lie to take the examination of any witnesses to prove the hand-writing -of such deceased witness or witnesses, or where that cannot be had, to prove the hand-writing of the grantor: which being done and certified by the justice, the deed may be recorded. Now surely the same evidence which would have been sufficient to prove the deed before a justice, will be sufficient before a jury. The objection is, that one of the witnesses might have been living. There was no direct proof of his death. But that was not necessary. It was proved, that no such person could be found or heard of. Therefore, within the meaning of the act, he could not be had, and in such case proof of the hand-writing of the other witness was sufficient. It was also objected, that the hand-writing of the grantor ought to have been proved. But the act does not require it, where the hand-writing of the witnesses is proved.
The other exceptions are to the charge of the Court.
1. The jury was told, that the circumstance of the survey having been made on a shifted location was immaterial, because, both plaintiffs and defendants claimed under it. The reason assigned for this opinion is conclusive. A survey on a shifted location shall not prevail against a third person who claims adversely to it, and who has acquired title without notice of it, and before it was returned to the Surveyor General’s office. But it is not for a party to say any thing against it, who makes title under it, and has taken a patent on it j and such is the situation of the defendants.
2. The Court directed the jury, that the deed from Hunter to J. Smith, dated 22d May, 1772, was good without record *47 ing. And so it was. It was not until the act of March, 1773, that deeds (other than mortgages) were required to be recorded ; although the parties were at liberty to record them if they pleased,-under the act of 28th May, 1713. Whether or not persons guilty of gross negligence, by which others were injured, might, on equitable considerations, be postponed to those who obtained subsequent deeds from the same grantors, is another matter. But no question of that kind arises oh this record: and, therefore, it would be improper to say any thing ón the subject.
3. The third exception is, to the Court’s declining to give an answer to the following question, “ If David M'-Millan “ purchased for a valuable consideration without actual no- “ tice of a survey made for Jonathan Smith, before the said “ survey was returned to the office of the Surveyor General, is “the entry of the survey in the book of the Deputy Surveyor “legal notice of J. Smith’s title, by which M'-Millan shall be “ affected ?” The Court answered, that inasmuch as it might he fairly inferred from the evidence, that the survey was returned before M'-Millan’s purchase, it was constructive notice of J. Smith’s title. In this, it appears to me, there was error. The question proposed was not answered. But the defendants had a right to the opinion of the Court on the point of law, and to the decision of the jury on the fact. At what time the survey was returned, was for the jury to say: and the Court was to instruct them what was the legal effect of the survey when returned.
4. The Court gave their opinion, that the recording of the ’deed from J. Smith to Samuel M'-Ferran, under the particular circumstances of this case, was not necessary. This deed falls within the provisions of the act of 15th March, 1775, by which it is enacted, that a deed not recorded within six months after its execution, shall be adjudged fraudulent and void against any subsequent purchaser for valuable consideration, who shall have his deed recorded before it. When this case was tried it seems to have been taken for granted, that the two brothers and the sister of J. Smith were his heirs. If so the unrecorded deed was void, so far as concerned Robert Smith’s share of the inheritance ; because Robert conveyed to a purchaser for a valuable consideration, which brings the case directly within the intent of the act. But at the death of J. Smith, and until the act to regulate *48 descents passed, 19th April, 1794, the law was not as was supposed. On the contrary, the eldest brother of J. Smith t00j¡. tjle whole. Whether Robert or James was the eldest c^oes not ceria^nty appear. But if it was Robert, the unrecorded deed of his brother Jonathan was totally void against McMillan, who purchased from Robert. It has been objected, that the defendants claim, not from J. Smith, but from William Hunter: and, therefore, it is immaterial to them at what time the deed to J. Smith was recorded. But this does not obviate the necessity of recording, because the whole title of Robert Smith, however acquired, passed to MiMillan. But if the deed from J. Smith to S. MiFerran was void, the whole estate descended on his brother: and McMillan, the purchaser for a valuable consideration, seeing no deed on record, had a right, under the sanction of the recording act, to take for granted, that the whole estate had descended. When he purchased of Robert Smith then, he might lawfully suppose that he should acquire the right both of William Hunter and of Jonathan Smith. Upon the circumstances of the case appearing by the evidence on record, it being uncertain which of the brothers was heir of J. Smith, that point should have been submitted to the jury, and the Court should have directed them how the law would be in case they should find Robert to be the heir or otherwise. The charge, therefore, by which it was laid down in unqualified terms, that there was no necessity for recording the deed of J. Smith, was erroneous. The judgment must be reversed, and a venire de novo awarded.
Yeates J. absent.
Brackenridge J. concurred.
Judgment reversed, and a venire facias de novo awarded.