# Woods *against* Farmere.

The possession of land is notice of the possessor's title ; but the registry by him of a particular title would restrict the generality of notice from possession.

A purchaser of land is not affected with constructive notice of any thing which does not lie within the course of his title or is not connected with it : he is not, therefore, presumed to know of the registry of a will containing a devise of the land which he claims by title paramount.

The registration of a will by the executor therein named will not affect his title to land devised to him, which he claims adversely. It will not have the effect to restrict the generality of notice of his title which is afforded by actual possession.

ERROR to the district court of *Alleghany* county.

James Woods against John Farmere and Robert Davis. Eject-ment for a part of lot No. 200 in the outlots of Alleghany.

The original title to the land was in John Woods, Sen. the father of the plaintiff, and both parties claimed under him.

The plaintiff proved clearly that he had purchased the land in

[Woods v. Farmere.]

dispute in the spring of 1815 by parol from his father; that he had paid the purchase money, and gone into possession, and there remained until the death of his father in 1819, and afterwards until 1825 or 1826; during which time he lived upon it. After that he let his mother have it for a pasture field, and she put a widow woman into the possession of it, from whom the possession was obtained by the present defendants or those from whom they claim.

The defendants, to maintain the issue on their part, gave in evidence the will of John Woods, Sen. proved the 4th of September 1819 and duly registered, whereby the land in dispute is devised to the plaintiff, who with his brother John were appointed executors and took out letters.

They further gave in evidence a judgment of James Arnold against John Woods, Sen., entered 9th of October 1819, upon which two executions had issued at different periods during the lifetime of John Woods, Sen., which were returned "stayed." Also another judgment of John Irwin against John Woods and James Woods, executors of John Woods, Sen. deceased, entered soon after the death of John Woods, Sen. Upon each of these judgments executions were issued, and the land in dispute, with other property, was levied on and sold the 21st of August 1826 to Messrs Burke and Fetterman, who conveyed the same to the defendants. The plaintiff was not present at the sheriff's sale, nor was there then any notice given of the plaintiff's title, except what was thus stated in evidence by a witness whom the court did not think worthy of credit: "Fetterman and Burke came and asked me if there was a house on the land. I showed them, and said this belonged to James Woods or William Carson; a part if not all."

The court submitted the facts to the jury to decide whether there was a parol sale by John Woods deceased to his son the plaintiff, and the purchase money paid by him and possession taken, in pursuance of such sale, by definite boundaries.

They also instructed the jury that the lien of the judgment of Arnold *v.* Woods was not continued by two executions issued on them and returned "stayed."

But the point on which the cause turned was, whether the purchasers at sheriff's sale had notice, either actual or constructive, of the equitable title of the plaintiff. On the subject of constructive notice the court thus charged the jury:

"This property was exposed to sale under two writs of *venditioni exponas*: one founded on a judgment obtained against John Woods in his lifetime, the other on a judgment confessed by the plaintiff James Woods as one of his executors. By the will of John Woods this same lot is devised to James.

"How then could James Woods's possession raise any presumption of actual notice that he claimed the land by a parol sale from his father? Who else would be expected to have possession of a deceased person's land but his son? His executor, his devisee of this very land, who confessed the judgment, was cognizant of all the

proceedings, made no objections, laid no claims, gave no notice or warning to purchasers.    What was there in such a possession to lead any man to inquire further, or put a purchaser on his guard, or afford a 'violent presumption' that he had actual notice or knowledge of these *secret parol family transactions.*    If the law were to raise such a *presumption* from *such circumstances,* one might justly suppose that the doctrine 'that equity has always been careful not to impeach the title of purchasers by presumptive notice' has *become obsolete.*

"You are instructed therefore that the possession of James Woods, under the circumstances of this case, was not sufficient to affect the purchasers at sheriff's sale with a legal presumption of notice, or actual knowledge of this secret equity."

Errors assigned.

1. The court erred in instructing the jury that the possession of James Woods, under the circumstances of this case, was not sufficient to affect the purchasers at sheriff's sale with a legal presumption of actual notice, or actual knowledge of this secret equity.

2. The court erred in instructing the jury that if they did believe the truth of all that witness stated as to actual notice, it would not be sufficient evidence of notice to affect the purchasers at sheriff's sale, and that therefore the title of the plaintiff must be postponed; and that it would be the duty of the jury to find a verdict for the defendant; and that the question whether the defendant had notice was immaterial, as he purchased from those who had a good title.

*Shaler* and *Lowrie,* for plaintiff in error, cited, 1 *Meriv.* 282; 5 *Binn.* 133; 3 *Serg. & Rawle* 289; 6 *Serg. & Rawle* 184; 2 *Serg. & Rawle* 495; 2 *Watts* 75; 2 *Ves. Jun.* 440; 1 *Rawle* 390; 3 *Penns. Rep.* 67.

*M'Candless,* contra, cited, 5 *Binn.* 132; 6 *Serg. & Rawle* 184.

The opinion of the Court was delivered by

GIBSON, C. J.—The English courts give an unlimited effect to possession as an index of title.    In Douglass *v.* Whitney, and Daniel *v.* Davidson, 16 *Ves.* 249, where the doctrine attained its maturity, it was settled that the possession of a tenant is notice of his actual interest, whether as a lessee or a purchaser.    The principle may seem to have been pushed, in these instances, to the verge of propriety; yet where the occupant has not an opportunity to register his deed, or a deed to register, nothing short of it could protect him. In Pennsylvania every written title may be registered; and where an occupant announces but one of his titles, he does an act which, for its tendency to mislead, ought to postpone the other.    By exhibiting a conveyance to which, by his own showing, his possession may be referred, he does what he can to turn a purchaser from the direct path of inquiry.    The party for whose protection registration is intended would be more misled by the use of it than if the occu-

[Woods v. Farmere.]

pant had pointed to his possession alone, as that would have led him to a particular examination of the foundation of it; and when the occupant therefore points the attention of the public to a particular conveyance by the register he abandons every other index. An exception to this might be the case of possession taken under a parol contract partly executed, which is not susceptible of registration; yet if it were the title mainly relied on, why register another, when, if neither were registered, the possession would be notice of both? In Plummer *v.* Robinson, 6 *Serg. & Rawle* 179, the registered title was a mortgage, the other a covenant for a purchase which was susceptible of registration; and it was held, in accordance with the principle indicated, that as the possession was consistent with the registry, the subsequent purchaser was not bound to inquire further. Whether the decision would have been different had the purchase of the equity of redemption been by parol, I pretend not to say: perhaps the principle indicated would have been equally applicable to it. It is this. The tenant's possession is notice of title in every form; the registry of a particular title is notice of that alone, and would be useless for any purpose but to restrict the generality of the notice from possession. It is therefore an indication that the occupant has narrowed his general to specific notice; and were he not bound by it, he might with impunity do an act to mislead one who is presumed to have used every means of information accessible to him so far as the security of his title is concerned—but no further. By the English principles of notice a purchaser is presumed to have known nothing which lay out of the course of his title; and I see nothing in our registry acts by which he is presumed to have known any thing which lay not in it, or was not connected with it. They raise a violent presumption that he saw all that a prudent man would see; and he is consequently presumed to have examined every perfect registry which might affect him; but no presumption beyond that can be admitted to prejudice or benefit him. Finding a conveyance on the register which may account for the tenant's possession, he may suppose the possession to be a badge of it and seek no farther. But is a purchaser under a judgment which carries back the inception of his title to the date of the lien supposed to have searched the register's office for the debtor's will? Presumptions are founded in habitudes established by experience of the usual and natural course of things; and I know not how it could concern one purchasing paramount to the will to inquire about it. All the world is not presumed to have seen a registry or record merely because it is such, but only those whom it behoves to look at it. A purchaser is presumed to have seen the registry of a previous conveyance, because, as he might be affected by it, it would be his business to see it; and there the presumption ends: but here the purchase was of an earlier title. Moreover, though the act of 1775 declares that a deed unregistered at the end of six months shall be postponed to a subsequent deed registered before it; and though a subsequent pur-

VII.—2 H*

[Woods v. Farmere.]

chaser from heirs or devisees of the first grantee is within its protection on the principle of Powers *v.* M'Ferran, 2 *Serg. & Rawle* 47, yet a devisee himself, standing in no higher equity than his devisor, is not.   A will prevails not against an unregistered deed ; and as it is unnecessary for the grantee to look at it, he is not presumed to have seen it.   Extreme caution might possibly require him to follow out the course of the title in order to guard against surprise by the intervention of a purchaser from the debtor's heirs or devisees; but here it is impossible that there could be such a claimant, for the defendants are not in the category of purchasers of an unregistered title. Though a judgment creditor be not a purchaser within the recording acts, a purchaser under his judgment has all the qualities of one, by relation, from the date of the lien; and his title being thus of record, and contemporaneous with the judgment, is paramount to all conveyances or incumbrances subsequently attempted.  A purchaser at sheriff's sale, therefore, having no concern with the debtor's subsequent acts, is not presumed to have been acquainted with them ; and it is to be remembered that here the purchaser could have been misled only by *actual* knowledge of the will; of which there was no other proof than what might be supposed to be derived from the registry of it.   As to its having been a positive act calculated to deceive, it is sufficient for the argument that it may not have been a voluntary one.   It was the occupant's duty, as an executor, to prove the will, even though he elected not to take under it.   The registry being out of the way, then, what have we?   We have an occupancy prior in origin to the ancestor's death ; and would it be reasonable for a purchaser to infer from it a seisin by descent in order to excuse him for having omitted to inquire whether it might not have originated in a purchase?   It might be natural to infer a seisin by descent from an entry after the death ; and it is equally natural to infer that one who entered as a tenant had not changed the quality of his possession ; yet in the cases first quoted it was held that the mere probability of a fact is not enough to relieve a purchaser from the trouble of inquiring into the truth of it.   But if the presumption of seisin by descent were permitted to excuse the supineness of a purchaser in any case, it would be rebutted by the origin of a possession shown to have been in the ancestor's lifetime.   It is true that a father sometimes gives his son a farm as an outfit, but more usually on a contract of purchase, obliging him to pay a part of the value for owelty of partition, or to raise portions for daughters; and the exceptions to it are too few to rebut the presumption of a purchase from the possession.   This presumption, as it is a wholesome one, ought not to be easily overthrown.  The duty of inquiring into the foundation of a notorious possession is not a grievous one, and it is soon performed.   Why, then, should a purchaser be suffered to act on probabilities as facts at the risk of any one but himself, when a moderate share of attention would prevent misconception or loss?  The doctrine of constructive notice is undoubtedly a sharp one ; but it is not more so in regard to a notorious possession than it is in regard

[Woods v. Farmere.]

to a registry.   Nor is it less reasonable ; for it certainly evinces as much carelessness to purchase without having viewed the premises, as it does to purchase without having searched the register.   At all events, it exists here, in respect to possession, almost as fully as it does in England; and in respect to the case before us, I perceive nothing in the registry of the will, or the relation of the occupant to the decedent, which ought to restrict it.

On the point of actual notice, however, the direction is unexceptionable.   The witness who warned the purchasers had not an interest to entitle his warning to respect.   He was the plaintiff's brother, and his own land was selling on the same execution ; but neither consanguinity nor community of burthen gives a right to interfere.   In Ripple *v.* Ripple, 1 *Rawle* 391, it was thought that an uncle might give notice as the next friend of an idiot destitute of a committee or guardian ; but that was on the score of necessity ; and even he was shown to have had a particular, though remote, interest of his own.   In Kerns *v.* Swope, 2 *Watts* 75, the English rule that information by a stranger, or even a general claim by a party, may be disregarded, was recognized and asserted : and the law of notice would be brought to a perilous pass if it were relaxed.   The purchasers, therefore, had constructive, but not actual notice.

Judgment reversed, and a *venire de novo* awarded.