PHILIP PELL v. WILLIAM C. McELROY, JOHN K. KELLY, AND GEORGE HEARST.

VENDOR'S LIEN—AGAINST WHOM IT MAY BE ENFORCED.—A vendor's lien for the unpaid purchase price of land may be enforced against the vendee and his grantees who have notice of the vendor's equities.

IDEM—NOTICE IMPARTED BY ADVERSE POSSESSION.—The fact of notorious and exclusive possession of lands by a stranger to a vendor's title, as of record, at the time of a purchase from and conveyance by such vendor out of possession, presumptively imparts notice to such purchaser of the equitable rights in the premises of the party in possession; and this presumption can only be rebutted on the part of such purchaser, or those claiming under him, by explicit proof of diligent and unavailing effort by the vendee to discover or obtain actual notice of any legal or equitable rights in the premises in behalf of the party in possession.

IDEM—NOTICE IMPARTED TO SUBSEQUENT PURCHASER BY CONTINUED ADVERSE POSSESSION OF VENDOR.—The continued adverse possession of lands by the vendor after his formal conveyance of the legal title, is a fact in conflict with the legal effect of his deed, and is presumptive evidence that he still retains an interest in the premises, and is sufficient to put a purchaser upon inquiry, and subjects him to the rule applicable in case of the party in possession being a stranger to the title as of record.

IDEM.—P. conveyed lands to M. by deed, which was immediately recorded, without receiving any portion of the purchase money, although it was in said deed recited as having been fully paid. Subsequently, M. conveyed said lands to K. and H. for a sound price. From a time long prior to said conveyance from P. to M., to and including said conveyance by M. to K. and H., P. had been in the actual and notorious possession of said lands. At the times of said conveyances M. was in insolvent circumstances. Subsequently P. brought action against M., K., and H., to recover personal judgment for said purchase money against M., and to enforce therefor as against K. and H. a vendor's lien on said lands. At the trial P. failed to prove any notice of his equities to K. and H., (who defended on the ground that they were purchasers in good faith, without notice,) except such as was imparted to them by P.'s said continued possession of the lands. *Held*, that the judgment, which was for P., as demanded, against K. and H., was properly rendered.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*S. Heydenfeldt, J. H. Saunders*, and *H. C. Hyde*, for Appellants.

*Charles Halsey*, for Respondent.

The points and authorities made and cited in the briefs of counsel are stated and discussed in the opinion of the Court.

By the Court, SPRAGUE, J.·

This is an action for the recovery of the amount due upon a promissory note made by the defendant McElroy to plaintiff for the purchase price of certain real estate described in the amended complaint, and to enforce the payment of such amount as a vendor's lien upon such real estate. The cause was tried by the Court without a jury, and upon specific findings of facts the Court rendered judgment against defendant McElroy for the amount due upon the note, and decreed a sale of the described premises in satisfaction of such portion of the judgment as should remain unsatisfied on return of execution on the judgment against defendant McElroy. The defendant McElroy made default; defendants Hearst and Kelly separately answered, and have separately appealed, the former from the judgment, and the latter from the judgment and order denying him a new trial.

The facts, as found by the Court below, are fully justified by the evidence; they are substantially as follows: On the 10th of December, 1862, plaintiff was, and for ten years theretofore had been, in the actual possession, by his personal residence thereon, substantial inclosure thereof, and cultivation by tenants paying him rent therefor, of every part of the land described in the amended complaint, and during the whole of such time had claimed right to the said premises in virtue of such residence thereon, inclosure, and cultivation thereof. While so in the possession, plaintiff, on the said 10th day of December, 1862, executed and delivered to defendant McElroy a deed of conveyance, whereby he sold and conveyed to him the said premises, which deed was properly acknowledged on the 11th day of December, 1862, and duly recorded on the 16th day of December, 1862, in the Recorder's office of the City and County of San Francisco. The consideration named in such deed of convey-

ance was four thousand dollars, and although the same was therein recited as having been paid, yet in fact it was not paid, and nothing, in fact, was paid by McElroy to plaintiff for such lands, or conveyance thereof; but contemporaneously with the execution and delivery of the deed, (December 10th, 1862,) it was verbally agreed by and between plaintiff and defendant McElroy that he, McElroy, should, twelve months after that date pay to plaintiff or his order the sum of four thousand dollars, with interest at the rate of one per cent per month, for said land and conveyance thereof; and at the same time it was further verbally agreed by and between them, that until said sum of four thousand dollars, and interest thereon as aforesaid, should be paid, the plaintiff should retain the possession, control, and use of the premises and every part thereof, and receive the rents and profits of the same, as he, plaintiff, was then enjoying, and had previously enjoyed the same. At the same time defendant McElroy executed and delivered to plaintiff his certain promissory note for said agreed purchase money and interest, as aforesaid, payable to the order of plaintiff, which has never been paid, nor any part thereof, and is now and continuously since its execution and delivery has been and remained in the possession of the plaintiff, and has never been negotiated or transferred by him to any one; and plaintiff, ever since his execution and delivery of the deed aforesaid to McElroy, has been and is in the open, notorious, and visible use and occupation, by himself and his tenants, of the premises so by him conveyed, and every part thereof; the same having been, during all that period, and being still subject to the exclusive dominion and use of the plaintiff, without any use or possession of any part thereof by or in the defendants, or either of them, at any time or in any manner. After the execution and delivery by plaintiff of the aforesaid deed of the premises to defendant McElroy, and after the same had been duly acknowledged and recorded, to wit: on the 28th day of February, 1863, McElroy conveyed to defendant Kelly a portion of the premises for and in consideration of eight hundred

dollars, which was much less than the actual value of the premises so conveyed to Kelly; and afterwards, on the 20th day of January, 1864, McElroy conveyed to defendant Hearst the remaining part of said premises for the consideration of six thousand dollars, which was the full value of the part so conveyed to defendant Hearst. At the time of the purchase by defendant McElroy from plaintiff of the premises, December 10th, 1862, defendant McElroy was and ever since has been insolvent.

The Court did not find that defendants Kelly and Hearst, or either of them, prior to their respective purchases, had any actual notice that the purchase money of the premises from plaintiff by McElroy had not been paid.

The fact of open, notorious, and exclusive possession and occupation of lands by a stranger to a vendor's title, as of record, at the time of a purchase from and conveyance by such vendor out of possession, is sufficient to put such purchaser upon inquiry as to the legal and equitable rights of the party so in possession, and such vendee is presumed to have purchased and taken a conveyance from the vendor with full notice of all the legal and equitable rights in the premises of such party in possession and in subordination to these rights; and this presumption is only to be overcome or rebutted by clear and explicit proof on the part of such purchaser, or those claiming under him, of diligent, unavailing effort by the vendee to discover or obtain actual notice of any legal or equitable rights in the premises in behalf of the party in possession. And when the location of the lands is such as to render personal application to and inquiry of the occupant practicable, a purchaser failing to make such application and inquiry is no more entitled to be regarded *a purchaser in good faith* than if he had so inquired and ascertained the real facts of the case.

Such, we understand, is the well settled general rule of law in this State, sustained by preponderant authority of American and English Courts. (*Hunter* v. *Watson*, 12 Cal. 363; *Lestrade* v. *Barth*, 19 Cal. 675; *Dutton* v. *Warschaur*,

21 Cal. 609; *Landers* v. *Bolton*, 26 Cal. 393; *Fair* v. *Stevenot*, 29 Cal. 486; *Killey* v. *Wilson*, 33 Cal. 693; *Woods* v. *Farmere*, 7 Watts, 386; *Williamson* v. *Brown*, 15 N. Y. 355; *Grimstone* v. *Carter*, 3 Paige Ch. 420; *Tuttle* v. *Jackson*, 6 Wend. 213; *Gouverneur* v. *Lynch*, 2 Paige Ch. 300; *Chesterman* v. *Gardner*, 5 Johns. Ch. 29; *Buck* v. *Holloway*, 2 J. J. Marshall, 180; *Barbour* v. *Whitlock*, 4 Monroe, 196; *Hopkins* v. *Garard*, 7 B. Monroe, 312; *Pritchard* v. *Brown*, 4 N. H. 404–5; *Colby* v. *Kenniston*, 4 N. H. 266; *Allen* v. *Anthony*, 1 Merv. 282; *Taylor* v. *Baker*, Daniels, 80; 2 Vesey, 437; 13 Vesey, 118; 16 Vesey, 249; 17 Vesey, S. C., 433.)

In the present case the question arises, whether the fact of open, notorious, and exclusive possession of lands by a vendor thereof, after transfer of his legal title thereto by deed, is sufficient to put a subsequent vendee of the same premises, while so in possession of the original vendor, upon inquiry as to the equitable rights of such original vendor, and subject such subsequent purchaser to the same rules as when a stranger to the title of his vendor, as of record, is in possession. Upon this point, as in regard to the rule heretofore stated, the authorities are somewhat conflicting.

The reasons assigned for withholding the application of the rule to the case of a vendor in possession, proceed upon the ground that by his deed he has in the most formal manner divested himself of all title and right of possession, and the party subsequently purchasing is justified in acting upon the presumption that he continues in possession in subordination to the title of his vendee. But the fact of possession is, of itself, inconsistent with the legal effect of his deed and immediate right of possession by his vendee, and should not that fact rather favor the presumption that some right or interest in the premises still remains in him? In the language of the Court in *Woods* v. *Farmere*, 7 Watts, *supra:* "This presumption, as it is a wholesome one, ought not to be easily overthrown. The duty of inquiring into the foundation of a notorious possession is not a grievous one, and is soon performed. Why, then, should a purchaser be suffered

to act on probabilities as facts, at the risk of any one but himself, when a moderate share of attention would prevent misconception and loss? The doctrine of constructive notice is undoubtedly a sharp one; but it is no more so in regard to a notorious possession than it is in regard to a registry. Nor is it less reasonable; for it certainly evinces as much carelessness to purchase without having viewed the premises, as to purchase without having searched the register."

The simple, independent fact of possession is sufficient to raise a presumption of interest in the premises on behalf of the occupant. And we can discover no just or rational ground for giving to this fact less significance as notice to a party purchasing the legal title from one not in possession, in consequence of the fact that such occupant had by deed divested himself of the legal title. For instance, should a vendor of lands make an absolute deed, which is put of record, and immediately take from the grantee a mortgage upon the same lands to secure a part or all the purchase money, by the terms of which mortgage he is to retain the possession until the entire purchase money is paid, and such vendor and mortgagee should continue in the exclusive possession with his mortgage unrecorded, it is very clear that, under the decisions heretofore referred to, a party purchasing of his vendee while such a possession was in the vendor, would take the premises with presumptive notice of the equities of the occupant. So, if a vendor of land make an absolute deed, which is put of record, and take a note for the purchase money, and immediately receive from his vendee a reconveyance by absolute deed not put of record, which, by a verbal agreement of the parties, he is to retain, with the possession, as security for the payment of the purchase money, while such possession continued it manifestly would operate as presumptive notice of his equities to purchasers of his grantee. So, in this case, if before or at the maturity of the note given by McElroy for the purchase money, he (McElroy) had reconveyed the land to Pell in con-

35

sideration of the surrender of his notes, and then, before Pell had put the deed of record, and while he was still in the exclusive possession, with his deed in his pocket, McElroy had sold and conveyed to defendants Kelly and Hearst, it would hardly be contended that they could be protected as purchasers in good faith in a Court of equity.

An absolute deed divests the grantor not *only* of his legal title, but right of possession; and when such grantor is found in the exclusive possession of the granted premises long after the delivery of his deed, here is a fact antagonistic to the fact and legal effect of the deed; and we cannot appreciate the justice, sound reason, or policy of a rule which would authorize a subsequent purchaser, while such fact of possession continues, to give controlling prominence to the fact and legal effect of the deed, in utter disregard of the other notorious prominent antagonistic fact of exclusive possession in the original grantor. He cannot be regarded *a purchaser in good faith* who negligently or willfully closes his eyes to visible pertinent facts, indicating adverse interest in or incumbrances upon the estate he seeks to acquire, and indulges in possibilities or probabilities, and acts upon doubtful presumptions, when by the exercise of prudent, reasonable diligence he could fully inform himself of the real facts of the case.

The case of *Grimstone* v. *Carter et al.*, 3 Paige Ch., *supra*, was one where the original grantor was in possession at the time of a subsequent purchase from his grantee, and Mr. Chancellor Walworth, in his opinion sustaining the equitable rights of the original grantor in possession as against subsequent purchasers, says: "This is undoubtedly a hard case for the purchasers, who supposed they were getting a good title. But as the complainant was not aware of the negotiation for the purchase of the property, and therefore had no opportunity to apprise them of his equitable claim, * * * it would be equally hard to deprive him of his property without consideration. Seymour and Welles were informed he was in possession, which, by the settled law of the land,

was sufficient to put them on inquiry, and to deprive them of the defense of *bona fide* purchasers without notice of his rights. And, in the language of Lord Eldon, having neglected to take the obvious precaution of inquiring as to the nature and extent of the tenant's interest in the property, they must suffer the consequences of their neglect."

The case of *Hopkins* v. *Garrard*, 4 B. Monroe, *supra*, involved the precise question now under consideration, and in delivering the opinion of the Court, Mr. Chief Justice Marshall says: "But the fact that, notwithstanding his deed to Hopkins, which acknowledged full payment, Garrard, the grantor, remained in possession of the land, was an indication that he had or claimed some interest in the land, and should have put the subsequent vendees on an inquiry, by which they would have easily learned that the purchase money was, in fact, unpaid, and probably that Garrard was holding the possession as security for it. On the grounds of notice, therefore, implied from the possession, the lien of Garrard for his purchase money is considered effectual against the subsequent purchase, even beyond the effect of the *lis pendens*."

The point under consideration was not directly or necessarily involved in the cases, cited by appellants, of *Dawson* v. *Danbury Bank*, 15 Mich. 489, and *White* v. *Wakefield*, 7 Sim. 401. The former case involved a controversy between the purchaser of the estate on foreclosure of a senior mortgage and junior mortgagees of the same estate, and the question presented was as to the effect of such purchase as against the junior mortgagees, not parties to the foreclosure suit, the same having been made for the benefit of the mortgagor, who continued in possession. In the latter case the Vice Chancellor expressly says: "This is not a case in which the Court ought to recognize that there was a lien on the estate for the purchase money unpaid." The estate was purchased by trustees, with a trust fund, and the vendor, (White,) with a full knowledge of that fact, allows one of the trustees (Wakefield) to retain two thousand pounds of

the purchase money to his individual use, for four per cent, without the knowledge or consent of his co-trustees, makes a deed, receipts in full for the purchase money, and then leases the estate at an annual rent of one hundred pounds. "This mode of dealing," says the Vice Chancellor, "was one which makes the case differ essentially from the common case between vendor and purchaser, when, from mistake or for the convenience of the purchaser, it happens that the estate is conveyed without payment of the purchase money in full; for, as White knew that the estate was to be purchased with trust money, he ought to have taken care that such an arrangement was made as that the purchase money might be safe and forthcoming. But this transaction is totally different; for the money was left under the absolute control of E. Wakefield, and as White did so deal with one of the trustees without the concurrence of the co-trustees or their *cestuis que trust*, he cannot be permitted, as against them or the tenants and their trustee, to say that he has a right to consider the estate as virtually mortgaged to him for the unpaid part of the purchase money."

In the case of *Scott* v. *Gallagher*, 14 Serg. and R. 433, relied upon by appellants, the reasoning of the learned Judge who delivered the opinion of the Court was directed to the question as to whether possession *per se* was notice to a subsequent purchaser of the interest of the occupant, and applies to all parties in possession indiscriminately, whether strangers to or directly connected with the title, as evidenced by the deed relied upon by the purchaser.

We are unable to appreciate the force of the reasoning, and unwilling to adopt the conclusions therefrom, announced in that case. Can a party be regarded as a *purchaser in good faith* when he has notice of a fact inconsistent with the legal effect of his vendor's title, and fails to seek an explanation of such inconsistent fact from the source most likely to afford it?

We prefer to adopt the more rational doctrine announced by Mr. Justice Selden, in delivering the opinion of the

Court in the case of *Williamson* v. *Brown*, 15 N. Y., *supra.*
Says that learned Judge: "The true doctrine on this sub-
ject is, that when a purchaser has knowledge of any fact
sufficient to put him on inquiry as to the existence of some
right or title in conflict with that he is about to purchase, he
is presumed to have made the inquiry and ascertained the
extent of such prior right, or to have been guilty of a degree
of negligence equally fatal to his claim to be considered as a
*bona fide* purchaser."

The continued exclusive possession of a vendor after his
formal conveyance of the legal title is a fact in conflict with
the legal effect of his deed, and is presumptive evidence that
he still retains an interest in the premises, and is sufficient to
put a purchaser upon inquiry, and subject him to the general
rule heretofore announced in case of the party in possession
being a stranger to the title as of record.

We are clearly of opinion, that the facts of this case, as
found by the Court below, are sufficient to justify the judg-
ment, and that the same should be affirmed.

Ordered accordingly.