The Court below sustained the report of the Master in the following opinion delivered July 26, 1872, by
Logan, P. J.:
We had little difficulty in agreeing with the Master that the evidence developed such elements of fraud in the original contract between Lower and Wightman as demanded a decree either avoid *411 ing the obligation of that contract or compelling compensation in damage. A much closer question however to our mind is as tO’ whether Nevins was an innocent purchaser of valley farm from. Wightman without notice.
Before going into this, however, we may say that the application by Wightman’s counsel to have the questions of fact referred to a jury made on the final argument if ever meritorious, is now much too late. After having submitted the determination of the facts to the arbitrament of a Master and having taken the chances of a finding in their favor, they cannot now after an adverse finding select, a new tribunal. No allegation of unfairness or charge of partiality is made against the Master nor is it presumed any such could be sustained. There is therefore nothing to induce us to grant the request. It is due to the Master to say that his report is elaborate and seems to be candid and his conclusions probably nearer the truth than the finding of a jury.
Turning then to the question as to whether Nevins was an innocent purchaser for value without notice, we will for our own convenience inquire first whether or not under the facts and circumstances he had constructive notice.
We are free to say that our first impression was that the Master erred in not holding there to have been constructive notice growing out of the fact of the possession by Lower of the land at the time of Nevin’s purchase. We did not then think the position of the Master sound in ruling — that the fact of a contract of lease, the term of which had not yet begun constituted Lower’s possession so equivocal as to take it without the rule that possession is notice. The Master’s doctrine seemed to us a dangerous encoachment on a wise and benificent rule of law and we therefor© have given the matter most careful and extended examination.
If it had appeared that, on inquiry by Nevins of Lower, then in possession of the land, at the time of his (Nevins) purchase, the fact of the fraud would have been discovered, in such event Nevin’s failure to inquire would to us have seemed the absence of ordinary diligence aud therefore constructive notice. In this view the fact of an existing contract for a future lease would not explain a present possession. If Lower became aware of the fraud after the 2nd of March, 1866, (the date of the contract of *412 lease of Wightman’s to Lower) and before the 24th of March, 1866, (the date of the delivery of deed by Wightman to Nevins) he had a right to depend on his possession as notice up until the 1st day of April, 1866, the time at which the tenure under the lease began. After this the burthen would have been on him as against any one with a knowledge of the lease to have given actual notice. The question then to our mind largely turns on the fact as to the time when Lower first became advised of the fraud perpetrated by Wightman. In short whether or not at the time of the purchase by Nevins from Wightman which was on the 24th of March, 1866, and -before the term of the lease began, Lower was in a position to have advised Nevins of the fact of the fraud and his claim to the title, despite his deed to Wightman by virtue of that fraud.
Nevins should not be prejudiced by not having' made an inquiry, which if made would have been fruitless and not have enured to the protection of Lower. If on the 24th of March, 1866, Lower had not notice of the fraud he was in full recognition of Wightman’s title and an inquiry then by Nevins must have resulted in such information as would fairly have induced Nevins to conclude the purchase from Wightman.
As to this fact, namely the time when Lower first discovered the fraud, the Master’s report does not advise us except as incidentals referred to in supplementary finding. The Master’s report is, however, so exhaustive of the general features of the case, and this being a single fact, discernable by an examination of the testimony we can have little difficulty in determining it, guided by the supplementary report.
Bringing to the inquiry our utmost care we are led, after an examination of all the evideuce, by the testimony of Samuel Lower, the plaintiff in answer to interrogatory “41,” taken in connection with the testimony of Esquire McCrea to the conclusion that Lower did not know of the fraud until July or August, 1866. In this connection Samuel Lower in substance says that he did not know at the time of signing lease that the representations made by Wightman as to the quality, location and value of the western lands was not correct and that the first he knew of this *413 was after he got Esquire McCrea to examine the deeds. From Esquire McCrea’s testimony we learn that this examination was in July or August, 1866.
We, of course, make no reference to the testimony of Wight-man, Nevins or Nelson in this connection, we rely upon the declarations of Lower, testifying as to a matter against his own interests and peculiary within his own knowledge, as connected and explained by Thompson McCrea, a wholly disinterested, uncontradicted and unimpeached witness.
Wherefore, as by inquiry Nevin could have discovered no fact at the time of his purchase by an inquiry of Lower, inconsistent with the face of the papers, he was not bound to make inquiry, and in view of this and all the circumstances in the cause, we must conclude there was no constructive notice.
Coming then to the question of actual notice to and alleged complicity with Wightman by Nevins,. we have a difficult and anxious inquiry. In the testimony, conflict and contradiction seem apparently irreconcilable. In treating this question we shall look indifferently to the first and second reports and the testimony attached to each. We may also find it convenient to treat-together allegations of notice and complicity.
Robert Nelson swears positively to actual notice, sufficiently direct, positive and express, if the strongest expressions were to be given credence, to bring it within the rule of the closest case. He is corroborated by the testimony of Wightman in his supplemental examination, who also swears to actual notice in Nevin of Lower’s allegation of fraud, Nelson is corroborated by Alex. Taylor, Esq., who swears to having heard Nevins say to Nelson shortly after his examination and during the same day, that what he had sworn was true, save as to some immaterial matter. This would have constituted an admission by Nevins of the fact of his having notice, inasmuch as Nelson testified to having given such notice, or otherwise evidence of complicity with Wightman. This position is somewhat further sustained by the fact of the price of the Huron House — the precedent negotiations — the singular reticence of Dr. Nevins in his first examination as to Nelson and his profuseness on this subject in his later testimonj', as also other less sig *414 nificant circumstances developed in the cause. This much as to affirmation of evidence oi actual notice and complicity. ■
On the other hand we have however, the fact that up until the first reporto! the Master there is no allegation of prior notice in Nevin, but on the contrary, this fact stood distinctly negatived in the testimony (vide reference to Lower’s testimony supra). Dr, Nevins in terms positively contradicts the fact of notice under •oath, and explains with some plausibility his connection with' Nelson. He also denies the fact that the negotiations with Wightman were in a part delayed from November, 1865, until March, 1866, by reason of his claiming a general warranty deed induced by a fear of diffiulty in getting possession. He attributed the delay entirely to a difficulty as to some articles of personal property, and in this he is corroborated by the testimony of Wm. J. Paulhamus, and still more strongly by the fact that in none of the letters which passed between the parties at the time upon the subject so far as they are in evidence, is there any mention made •of the difficulty in getting possession.
We then had the character of Nelson for truth attacked. This effort however., the Master quaintly remarks, “was not attended with such satisfactory results as he (Dr. Nevins) would have wished for.” How strong Dr. N. wished the testimony we cannot say, but that it is largely weak is evident.
To these with certain other circumstances more or less pregnant on his side is added the finding of the Master. Is this-finding then sustained by these facts.
It might be conceded that without the testimony of Lower before referred to we would have difficulty in sustaining the Master. We cannot, however, imagine that Lower could be mistaken in saying he was not informed of the fraud until he took the deeds to McOrea. . If so this fact is wholly irreconcilable with any such construction of Nelson’s testimony as would constitute notice from Lower to Nevins of the fraud. The Master did not so credit this testimony of Nelson. Nor can we in the light of the testimony and the Master’s finding give it the full force sought by the complainants and Wightman’s counsel.
We have no .doubt that Nelson is mistaken in so far as he con *415 tradicts the testimony of Lower and therefore Nevins could not before his purchase from Wightman have received notice of the fraud from Lower. That Lower earlier than his actual discovery of the fraud might have felt in sympathy with his now deceased wife’s anguish, in giving up the homestead of which we are informed in the testimony, and in popular parlance thought himself cheated by Wightman’s fairly getting a good bargain out of him, is possible.
Or it may be that he regarded as cheating, those blandishments allowable by the laws of trade, though responsible to morals through the seductive influences of which Wightman without actual fraud, ,had led him into a contract that broke up the family . association, sending them from'the quiet and peaceful Indiana to the great west, where as we learn from the testimony, the neighbors told him the Indians were. All this we say is possible, but would not have avoided the contract, and if told to Nevins would not necessarily have been notice. But that Nevins had notice from Lower on or before 24th March, 1866, of the fraud charged in the bill and which moved the Master to sustain the recovery against Wightman, and how moves this court to sustain this action of the Master, we cannot believe.
As to whether Nevins had notice of the fact of the fraud from Wightman or in other words was a party to it, the testimony is at most, conflicting and contradicting. Supposing Nelson to have received his knowledge of the fraud from Wightman and communicated to Nevins would then have him in conflict with himself and the force of his testimony destroyed. Or looking at the allegation that Nevins was privy to Wightman’s fraud, we again glance over the testimony and find nothing clear and satisfactory pointing to such conclusion.
No element in the cause seems to invite us in the aid of justice to a reversal of the Master’s finding upon these questions of fact. Something and not a little is due to the conclusions of a master upon, such questions. He has the witnesses before him, sees their expression, their conduct and actions are reflected upon him and he sympathizes with their motives; therefore his construction of the testimony is entitled to great weight.
Besides to him is committed questions of fact. Still apparent *416 injustice or even a marked weight of evidence would have moved us despite his conclusions; of the existence of such in this case we are not convinced.
It is very much urged by counsel of Wightman, that the Master overstepped his power in imposing pecuniary compensation upon Wightman and that the Court has no power to enforce such decree. To this it is enough to say that the authorities referred to by the counsel on argument fully vindicates the action of the Master and the facts of this case seem with great force to invoke the exercise of such power.
We may also here refer, although somewhat out of order to the position taken by counsel that no tender of reconveyance or repayment of the $50 paid by Wightman preceded the institution of these proceedings. Such tender has however been made and is at present on deposit for the benefit of the defendant. We have not been able to regard the failure to make such tender earlier as sufficient under the circumstances at this late day to dismiss the case with costs.
Wherefore, and now, July 26, 1872, the exceptions to the report of the Master are overruled and the report of the Master confirmed and the report adopted as the judgment of the court. It is further directed that a decree conformable to such judgment be drawn by counsel and presented to the court according to Equity Hules, No. 78 and 79, and it is further ordered, should the complainants counsel choose to avail themselves of the privileges. of the 80th Hule that the amount entered and indexed shall be the net sum of $4,000 with interest from the 9th of June 1870.
DECREE OF THE COURT.
And now, to wit, Sept. 29th, 1872, the cause coming on to be heard and having been fully argued by counsel after due consideration it is ordered, adjudged and decreed that the bill of the complainant, Samuel Lower, be and the same is hereby dismissed as against the respondent John Nevins.
And it is further ordered and adjudged that the respondent, John Wightman, do pay the complainant Samuel Lower, the 'sum of four thousand dollars, with interest thereon from the ninth day *417 of June, A. D., 1870, for the damage sustained by reason of the representations aforesaid and that the said Samuel. Lower, do deliver up and surrender to said John Wightman, the several deeds he has received from him for the lands in Wisconsin, and that the respondent Wightman pay the costs of this proceeding. And it is further ordered that the compensation of A. O. Boyle, Esq., the Master in the case be fixed at four hundred dollars. The parties by their counsel being present, waive notice of the making and entering of this decree.
Lower then appealed to the Supreme Court and assigned for error.
1. The Court erred in dismissing complainants bill, as against the respondent, John Nevins.
2. The Court erred in finding that John Nevins was a bona fide purchaser, without notice actual or constructive.
3. The Court erred in not ordering the agreement between Lower and Wightman, and the deed made in pursuance thereof, dated October 5th, 1865, to be delivered up and cancelled, for the reason that they were fraudulent and void.
4. The Court erred in not decreeing the deed of October 30, 1865, John Wightman to John Nevins, null and void as against Samuel Lower.
John P. Blair and H. W. Weir, Esqrs., for Lower argued :
That Lower’s reconveyance of Wisconsin lands was in time at the trial: Babcock vs. Case, 11 P. F. S. 431.
Lower was in possession, which was at least constructive notice to Nevins: Randall vs. Silverthorn, 4 Barr, 173; Woods vs. Farmere, 7 Watts, 382; Blight vs. Schenck, 10 Barr, 295; Daniel vs. Davidson, 16 Vesey, 294; Van Amringe vs. Morton, 4 Wh. 382; Krider vs. Lafferty, 1 Wh. 303; Grimstone vs. Carter, 3 Paige, 421; Webster vs. Maddox, 6 Maine, 258; Colby vs. Kenniston, 6 New Hampshire, 262.
In Scott vs. Gallagher, 14 S. & R. 389, there was a secret agree - ment and the holder was negligent in not recording.
Lower was noi estopped, by the lease: Thayer vs. United Brethren, 8 Harris, 62.
*418 The remark in Leech vs. Ansbacker, 5 P. F. S. 80, was about an ' actual tenancy. Lower would have had no rights under the lease until April 1, 1866, 2 Blackstone’s Comm. 144; 5 Bacon’s Abridgement, 631; Sennett vs. Bucher, 3 Pen 392, and consequently was not subject to the presumptions arising from an actual tenancy.
If Nevins is an innocent purchaser the Court has power to make a decree against Wightman for a sum of money: Woodcock vs. Bennet, 1 Cowen, R. 711; Andrews vs. Brown, 3 Cush. 130; Cud vs. Rutter, 1 P. Williams, 570; Pratt vs. Law, 9 Cranch, 492, 494, Harrison vs. Deramus, 33 Alabama, 463; Bell vs. Thompson, 34 Alabama, 633; Lee vs. Howe, 27 Mo. 521; Smith vs. Fly, 24 Texas, 345; Bailey vs. Burton, 8 Wend. 339; Traip vs. Gould, 15 Maine, 82; 6 Peters, 389; 1 McL. 200; Phillips vs. Thompson, 1 Johnson Ch. R. 120; 2 Story Eq., Sect. 399.
Equity has jurisdiction in this case; 2 Story’s Eq., Sect. 398: Hatch vs. Cobb, 4 Johnsoa Ch. R. 560.
In an action at law no service could have been made on Wight-man, while in equity service was made by publication under Act of April 6, 1859.
Silas M. Clark and Wm. M. Stewart, Esqrs., on behalf of Nevins, appellee, argued:
That the parties in this case were three ; each having a separate, independent and antagonistic interest to the other two. Lower seeking the cancellation of the deeds, or failing in that, damages from Wightman. Wightman denies the alleged fraud, but failing in that he seeks to aid Lower in recovering the land from Nevins, and thus escape himself from the decree against him for damages. Nevins’ defence is that he is an innocent and bona fide purchaser from Wightman for full value, and without notice of the fraud, alleged by Lower. .
The Master found as a fact that Nevins had no actual notice of it, and his finding, though not conclusive, is entitled to great weight: Phillips’ Appeal, 18 P. F. S. 130. In this case the Court below have approved of the finding of the Master, and it becomes like a special verdict: Clark’s Appeal, 12 P. F. S. 450.
Nothing less than actual, open and unequivocal possession is deemed constructive notice to a bona fide purchaser of the legal *419 title, without actual notice of the trust: Kerns vs. Swope, 2 Watts, 78; Ripple vs. Ripple, 1 Rawle, 390; Woods vs. Farmere, 7 Watts, 387; Peebles vs. Reading, 8 S. & N. 496; Scott vs. Gallagher, 14 S. & R. 334.
Actual possession is deemed notice, because it is the purchaser’s duty to see in and underwhattitle thelandis occupied: Brightley’s Equity, Sect. 116.
But it is also the duty of the occupier not to record a title which is inconsistent with his claim, and thereby mislead a purchaser, for “when the occupant therefore points the attention of the public to a particular conveyance by the register he abandons every other index;” Woods vs. Farmere, 7 Watts, 385. The' same principle also applies where (as in this case) the party who claims to ¡be the owner becomes a tenant by accepting a lease; for “when ibe party is in possession under a lease, the knowledge of the lease dispenses with the inquiry of how the possession is held:” Leach vs Ansbacher, 5 P. F. S. 89.
Wightman also appealed, alleging that the Court erred in not granting a trial by jury, and in awarding damages against him in the equity proceeding, which might have been recovered at law.
A. W. Taylor and S. N. Pettis, Esqrs., for Wightman argued:
That Lower should have returned the money and papers re-ceived before attempting to rescind: Murphy vs. McVickers, 4 McLean, 252; Espy vs. Anderson, 2 Harris, 308; Simpson vs. Wiggin, 3 Woodbury and Minot, 413; Hunt vs. Silk, 5 East, 449; Staines vs. Shore, 4 Harris, 200; Pearsoll vs. Chapin, 8 Wright, 9.
Misrepresentation as to value is not ground for rescission: Graham vs. Pancoast, 6 Casey, 89; 1 A. K. Marshall, 230; Rockafellow vs. Baker, 5 Wright, 320; Adams’ Equity, 400; Davidson vs. Little, 10 Harris, 245; Sunbury and Erie N. N. Co. vs. Cooper, 9 Casey, 280; Cornelius vs. Molloy, 7 Barr, 293.
The Supreme Court affirmed the decision of the Court below in both cases on January 27th, 1873, as follows:
Per Curiam.
Appeals dismissed, and decree affirmed.