## JOHN P. JOHNSON v. E. H. CLARK.

18   157
70   716

1. LAND BOUGHT BY PARTNERS, *and paid for by Partnership Funds; Title Taken in name of One Partner; Equitable Title.* Where L. and·B. were partners in 1857 in the transaction of a general real-estate business, and in June of that year they purchased real estate in the territory of Kansas for the firm, paid for it with firm money, and entered the same on the books of the firm as assets of the firm, and afterward paid the taxes thereon with firm money, and both parties treated the lands as partnership property, *held*, that although the legal title of the real estate was taken in the name of one of the partners only, the equitable title would be in both partners according to their respective interests.

2. ——— *Adverse Title; Purchaser Charged with Notice.* Where partnership of the character above described is dissolved by the death of one of the partners, and the legal title of the real estate of the firm in which both partners have equal interests, is, at the death of the partner, in such deceased partner, and upon due proceedings had by administration the undivided-half of the real estate belonging to the intestate is purchased by V. at an administrator's sale, and such grantee also obtains the equitable interest of the surviving partner to the real estate by deed, and thereupon conveys said land by warranty deed to C., who takes immediate occupation of the premises, makes valuable and lasting improvements thereon, pays taxes assessed against the land, and has open, notorious, unequivocal, and exclusive possession of the real estate, under an apparent claim of ownership, *held*, that where the deeds to V. and C. have all been duly recorded, that a purchaser buying of the sole heir-at-law of the deceased partner the said real estate, is charged with notice of whatever claim the possessor asserts up to the date of purchase, whether such claim is legal or equitable; and *held*, that such purchaser, so buying of the heir-at-law of the deceased partner, obtains no title which can be asserted against C. in the possession of the premises.

3. PROBATE COURT OF TERRITORY; *Jurisdiction.* Under section 2 of ch. 2 of the laws of 1859, the probate court of any county in the territory of Kansas, in which were situate lands belonging to an intestate, had juris-

diction to grant letters of administration, upon proper application being made, on such estate of the intestate, although the deceased died out of the territory, and had at his death a mansion-house, or place of abode, in another state.

4. ———— *Administration of Estates, Not Invalid by Reason of Informalities.* The application for letters of administration under ch. 2 of the laws of 1859, sections 11 and 12, is sufficient, if in writing, stating the names of the heirs of the deceased, and showing that the applicant was sworn to the truth of the affidavit by the clerk of the court, although the affiant's name is written below the jurat, and although in other respects the application is informal.

5. ———— *Sale not Invalidated by Informalities.* The acceptance and approval of the bond of the person to whom letters of administration were granted on May 5th 1860, by the written indorsement thereon of the probate judge, when such bond was signed by the administrator and one surety only, and the surety at the time was the governor of Missouri, held not to invalidate a sale of real estate made by such administrator after the report of sale has been approved by the probate court and after the administrator has executed, acknowledged and delivered to the purchaser a deed therefor containing the statutory recitals as provided in section 141 of said act of 1859.

6. ———— *Application and Order to Sell Real Estate.* Where an application was made by a creditor on November 5th 1860, to the probate court, praying for an order for the sale of the real estate of an intestate, which was signed and sworn to by such creditor, and contained a statement of the debts of the estate in the aggregate, and set forth that the personal property belonging to the estate was insufficient to pay the expenses of the administration, that the debts could not be paid without selling the interest of the intestate in the real estate described in the petition, and of which application the administrator had verbal notice prior to the presentation of the same, *held*, that such application was sufficient to authorize notice to be given thereof, and to issue an order to sell real estate, on proof of publication of notice made to the court, and upon hearing of the testimony in the matter, and no objection being made thereto.

7. ———— *Error which does not Mislead, does not Invalidate.* The law required notice to be published, that unless objections be shown to the contrary on the first day of the *next term* of the court, after an application was made to sell real estate to pay the debts of an estate, that an order would be made for the sale. The application was made in November 1860. The *next term*, by the law commenced the first Monday of January 1861—January 7th. The notice stated that the objections must be shown on or before the January term of the court to be held on the 1st day of January 1861. The hearing on the application was had at the regular January term, 1861. The notice was dated November

9th, 1860: *Held*, that the notice could not have misled, and the error did not invalidate the sale.

8. ———— *Recitals, made as Required by Statute, Prima Facie Evidence.* Under section 142, laws 1859, p. 29, an administrator's deed is evidence of the facts therein recited ; and all the recitals required to be contained therein by the preceding section, (§ 141,) which are set forth in the deed, are *prima facie* true, without further proof.   •

### *Error from Brown District Court.*

EJECTMENT, brought by *Johnson,* to recover possession of a quarter-section of land in Brown county. *Johnson* claimed to be the owner of the legal and equitable estate. *Clark* admitted possession, and set up title, both legal and equitable, in himself. All necessary facts, respecting the respective claims and titles of the parties, are stated in the opinion, *infra.* Findings and judgment in favor of defendant, at the August Term 1874 of the district court, and plaintiff *Johnson* brings the case here on error.

  *C. W. Johnson,* and *Clough & Wheat,* for plaintiff.

*Ira J. Lacock,* and *W. W. Guthrie,* for defendant.

The opinion of the court was delivered by

HORTON, C. J.: On April 29th 1857, John H. Likins and John W. Boyd, both of them residing in the city of St. Joseph, state of Missouri, entered into a partnership (with the firm-name of Likins & Boyd,) for the purpose of transacting a general real-estate business, such as selling real estate on commission, buying, selling and locating land-warrants, paying taxes, and such other transactions as usually pertain to the real-estate business. There were no written articles of partnership, and at the formation of the partnership there was no agreement that the firm should buy, sell, and speculate in lands on their own account. This partnership continued until the death of Mr. Likins, which occurred at St. Joseph, March 13th 1860, and the partnership books have been in the possession of Mr. Boyd ever since the death of Likins. In June 1857, the firm purchased

<span style="font-variant: small-caps;">Statement of facts.</span>

several tracts of land, including the tract in controversy, in Brown county, Kansas, known as the Iowa Trust Lands, which were sold at a government trust sale, at Iowa Point, for the benefit of the Iowa Indians. These lands had been settled upon by squatters, each of whom had the right to purchase his quarter-section. The firm of Likins & Boyd had made arrangements before the sale with several of these squatters, or claimants, for a transfer of their lands, or the certificates therefor, at a price then agreed upon. Likins attended the sale at Iowa Point in behalf of the firm, and made the purchase from the claimants, they bidding off their lands and then assigning the certificates of purchase in blank. These lands were bought for the firm, and paid for with the money of the firm, and they were entered on the books of the firm, under the heading of "stock account," as assets of the firm. Sylvester B. Stines was the claimant of the quarter-section in controversy in this action, and the firm paid him $452 therefor, and the same was entered in "stock account." This quarter-section of land was conveyed by letters patent of the United States, and in the individual name of John H. Likins, as well also as several other of the tracts purchased in said sale, none of which were patented in the name of Likins & Boyd, nor in the individual name of John W. Boyd; and the legal title of the quarter-section in controversy stood in the name of John H. Likins at the time of his death. The patent bears date, October 1st 1858. Mr. Likins afterward bought some lands for the firm, and took deeds in the individual name of John W. Boyd; and Boyd bought some lands for the firm, and took the title in the name of John H. Likins, so that the principal part of the partnership land stood in the name of one or the other of the partners individually, though some stood in the name of Likins & Boyd. The firm treated these lands standing in the name of each partner individually as partnership stock, and the firm paid the taxes on them as such.

The patents for the Iowa trust lands were kept in the office of Likins & Boyd, and the defendant Clark produced

them at the trial, the plaintiff never having had possession of them.  John W. Boyd, the surviving partner, who resided in St. Joseph, Missouri, and was never a resident of Kansas, administered the partnership effects in the state of Missouri.  He did not include the Kansas lands in said administration.  His first settlement in the probate court of Buchanan county, Missouri, was filed July 3d 1861; the second February 12th 1864, and the third June 7th 1865, the last settlement showing balance due Boyd, administrator, of $3,162.92.  Rich Likins was the administrator of the individual effects of John H. Likins, in Missouri.  Letters of administration on the estate of John H. Likins, were granted to John Stewart, of Doniphan county, Kansas, on May 5th 1860, by the probate court of said county.  Thereafter certain proceedings were had in the said probate court, which resulted in the sale of all the right, title and interest to all lands which John H. Likins, deceased, had at the time of his death, in Brown, Doniphan, and Atchison counties, in the state of Kansas.  The sale of the property in this controversy took place at the court-house door in Hiawatha, the county-seat of Brown county, March 5th 1861. The price paid was $126.  The land was bid off by John W. Boyd, for John M. Vimont, as trustee of Virginia M. Boyd.  John M. Vimont was the son-in-law of John W. Boyd, and Virginia M. Boyd was a daughter of John W. Boyd, and at the time of said sale aged about thirteen years. At the April Term 1861, of said probate court, being the next term of the court after such sale, the report of the administrator of the sale of the real estate made March 5th 1861, was confirmed by the court, and on April 1st 1861 a deed from such administrator to John M. Vimont, trustee of Virginia M. Boyd, was executed for the real estate named in this case.  The deed was acknowledged April 1st 1861, before E. M. Lee, register of deeds of Doniphan county, and was filed for record in Brown county on the 10th of said April, and duly recorded in book F, at pages 93 to 101 inclusive.  On April 2d, 1861, John W. Boyd conveyed by

deed of warranty, duly acknowledged and delivered, to John M. Vimont, as trustee of Virginia M. Boyd, an undivided-half of the four tracts of land in Brown county purchased in the name of said Vimont as trustee, etc., at said administrator's sale, including the tract in suit. This deed was filed for record in Brown county, also, on said April 10th, and was duly recorded. On February 11th 1870, Virginia M. Boyd, being then of full age, acknowledged the receipt of $1,200, from the defendant Edward H. Clark, for her use and benefit, and executed and delivered to said John M. Vimont, her trustee, a written power and direction, duly acknowledged, to convey the premises in controversy to said Clark. On the same day the said John M. Vimont, as such trustee, executed and delivered to said Clark a deed of warranty for said premises, in compliance with the written power and direction of the *cestui que trust*, and the sum of $1,200 received to the use and benefit of said Virginia M. Boyd. Said two deeds were filed for record in Brown county, March 8th 1870, and duly recorded in vol. I, at pages 193 to 195, of the register's office. After the execution and delivery of said deeds, said Clark entered into possession of said premises, in the spring of 1870, and has ever since resided upon them. From the spring of 1870, up to the time this action was commenced, Clark had made improvements on the tract of land in suit, costing him about $1,456, and of the value of about $3,000, when the plaintiff John P. Johnson obtained his deed for the same. The defendant Clark and his grantors paid all the taxes on the land in suit ever since the death of John H. Likins.

At the death of John H. Likins, on March 13th 1860, his only surviving child, Myra H. Likins, became his sole heir-at-law. She was born in February, 1849. Myra's mother died in 1860, prior to the death of her father. On July 21st 1870, Myra H. Likins was married to James C. Mobley, at Hagerstown, Md., where she has resided since 1860. On February 6th 1872, Myra H. Mobley and husband executed to John P. Johnson, the plaintiff, a quitclaim deed for the

property in suit, with a large amount of other real estate, for the consideration of $1,500. This deed was duly acknowledged in Washington county, Md., February 6th 1872, and was delivered to plaintiff John P. Johnson, and filed for record in Brown county on February 24th 1872, and duly recorded. The plaintiff was at the time of the purchase an extensive dealer and speculator in real estate, particularly in Doniphan and Brown counties, and well acquainted with the value of lands, and familiar with the investigation of titles, and before he made the purchase of the lands from Mrs. Mobley and husband, he procured and examined an abstract of the title of the property, and also wrote to Washington and learned that the land was patented to John H. Likens. He made the purchase without viewing the lands, and without knowing what improvements were on them; but the buying of unimproved lands without seeing them was not an unusual transaction with him.

The same day on which the plaintiff recorded his deed in Brown county, February 24th 1872, he commenced his action in the district court of that county against the defendant E. H. Clark for the recovery of the real property in dispute in this cause. The case was referred to David Martin, Esq., to report the facts, and thereon the court gave judgment for the defendant. Proper exceptions were taken, and the cause is in this court for review at the instance of the plaintiff.

We have carefully read the voluminous record in the case, and also considered the arguments of the learned counsel on either side, as well as the many authorities cited; and while we cannot agree with some of the conclusions of law found by the district court, we are satisfied that upon the facts found the judgment of the court below was correct, and should be affirmed. Our examination has led us to the conclusion, that at the time of the death of John H. Likins, John W. Boyd had an equitable interest in the land, the legal title of which was in John H. Likins, of at least one undivided-half of the same, and that such equitable interest was duly conveyed on April 2d

1. Lands of partners; equitable title.

1861 by John W. Boyd, by warranty deed to John M. Vimont, as trustee for Virginia M. Boyd, and on February 11th 1870 duly conveyed by deed from the trustee, joined in by the *cestui que trust*, to the defendant Clark. The real estate having been purchased by partners, with partnership funds, and on joint account, and having been placed upon the books of the firm as partnership property, and so treated as assets of the firm to the dissolution of the partnership by the death of Likins, and Boyd having contributed his full share of the purchase-money, although the title was taken in Likins' name, Boyd had an equal equitable interest therein, and this interest was of such a character as could be enforced in a proper proceeding in the courts. Clark, the defendant, took immediate possession after obtaining the deeds, made improvements, paid taxes, and was the exclusive occupant of the premises. The records of Brown county, at the date of the plaintiff's purchase, showed a deed to defendant Clark from Vimont, who as trustee derived title to the *undivided-half* of the property by the probate proceedings in the matter of the estate of John H. Likins, deceased, and also as such trustee derived title to another *undivided-half* of said premises from John W. Boyd. Of all these deeds, Johnson had full notice. It is well established, that open, notorious, unequivocal and exclusive possession of real estate under an apparent claim of ownership, is notice to the world of whatever claim the possessor asserts, whether such claim is legal or equitable in its nature. Under these circumstances it was incumbent upon the plaintiff to inquire. Inquiry would inevitably have lead him to knowledge of Clark's possession. This was notorious. Having ascertained the fact of Clark's possession, he was bound to pursue his inquiry until he ascertained the nature of the possessor's claim. Having these means of knowledge at his command, and failing to use them, the law treats the plaintiff precisely as though he had used them and learned all that might have been ascertained therefrom. And therefore the plaintiff, upon the facts in the case, is held by the law to

*2. Adverse title; notice to purchaser.*

have had, at the date of his purchase, full knowledge of Boyd's equitable interest in the land at the death of Likins, and to all of which interest Clark succeeded by his purchase from the grantee of Boyd.

The plaintiff seems to have been unfortunate in the means adopted by him to understand the condition of the property before buying. He took the trouble of writing to Washington to learn about the patent, when he could have seen it by calling upon Clark, who produced it on the trial. He obtained abstracts of title, but notwithstanding the conveyances of undivided parts to Vimont, the grantor of Clark, he made no inquiry of either Clark or Boyd, and finally paid the purchase-money without viewing the land, and without knowing what improvements were on them. An interview with Clark, on the premises, would have enabled the plaintiff to have been fully acquainted with Clark's claim, and his rights to the premises, as also the valuable improvements on the place. There is nothing in the record by which Clark is estopped from relying upon his possession, as notice of so much of his title as was derived through the deed of John W. Boyd.

As stated above, an investigation of the proceedings of the probate court shows, that the deed of the administrator of such estate, of April 1st 1860, conveyed title of an undivided-half of the premises sued for to John H. Vimont, as trustee, etc. The proceedings in said court were sufficiently regular to transfer the interest sold. The appraisement was for an undivided-half of the premises; the certificate of the appraisement was referred to in the administrator's report of the sale, was returned with the report of sale to the court, and was copied in full in the deed. On the day after the administrator's deed was executed, the deed of John W. Boyd to the grantee of the administrator's deed, was also delivered, and this conveyed to such grantee another undivided-half of the premises. The administrator's deed conveyed all the right, title and interest of John H. Likins, deceased, to Vimont, as trustee. At the time, this interest was assumed to be one undivided-half. The appraisers acted upon this understanding,

and the purchaser so bought. The plaintiff in error presents many supposed defects to the proceedings in the probate court, and claims that such proceedings were not sufficient to divest the title conveyed by the administrator from Myra H. Moberly, *nee* Likins. Premising that, as a matter of public policy, the importance of upholding sales made by guardians, and personal representatives, is very great, whenever it can be done under the law, as the proceedings had in the probate court do not appear to be void, the sale of the real estate based thereon will be sustained.

Under section 2, page 10, laws of 1859, the probate court of Doniphan county had jurisdiction to grant administration on the estate of John H. Likins, although his mansion-house, or place of abode, was in St. Joseph, Mo., at the time of his death, as he possessed lands in said county. Said section substantially prescribed that if the intestate died out of the territory, having no mansion-house, place of abode, or lands in the territory, letters could be granted in any county; but if the intestate died under like circumstances, except that he was possessed of lands *in* the territory, letters could rightfully be granted in the county in which the land, or part a thereof, was situated.

3. Probate court of territory; jurisdiction.

The application for the letters being in writing, and stating the name of the only heir of the deceased, and purporting to have been sworn to before the clerk of the court by the applicant, although blended with the oath of office as administrator, was sufficient to authorize the granting of letters therein. The signing of the probate judge's name above that of the clerk, did not render the affidavit void; nor was the same invalidated by the name of the applicant being written below the jurat. These matters were mere informalities. The fact that the letters were signed, "A. A. Dougherty, Judge, by E. M. Lee, Clerk," did not render them invalid, although sections 21 to 25, laws of 1859, pp. 12, 13, required the *testimonium* clause to be signed only with the signature of the clerk. Neither is

4. Informalities do not vitiate letters of administration.

the omission to set forth the seal to the letters in the probate record thereof, any such act as to make them void. The letters purport, in the attestation part, to have been sealed; and in the absence of the originals, and the years intervening since the record was made, we cannot presume the letters were not duly issued.

The court having the jurisdiction to grant letters of administration on the estate of the deceased, and an application having been filed to invoke its authority, and letters having been duly issued thereon, the court had the right *5. Informalities do not vitiate sale.* to pass upon the sufficiency of the bond of the administrator, conditioned for a proper performance of his administration; and after such bond was accepted, and the same had been approved as follows:—"I approve of the sufficiency of the penalty and security of the within bond.—A. A. Dougherty, Probate Judge"—by written indorsement thereon by the probate judge, a sale of real estate made by such administrator, under the order of the court, which has been approved by the court, and a deed issued to the purchaser thereon, will not be held void because said bond was only signed by the administrator, and by one surety, and it is afterward shown by parol evidence, in a collateral proceeding, that such surety, at the time, was a non-resident of the territory of Kansas, and the governor of Missouri. The numerous authorities cited by the counsel of the plaintiff to establish a contrary rule, do not apply on this point, as in the cases so referred to the bonds were required as a condition precedent to the sales of the real estate, and were not bonds given by administrators upon qualifying for office, as provided for in §§ 15 and 16, laws 1859, page 12.

The application made by John W. Boyd, on November 5th 1860, to the probate court, praying for a sale of the real estate of John H. Likins deceased, gave juris-*7. Error, which does not mislead, does not invalidate.* diction to the court to make the subsequent orders allowed; and the administrator's sale was not void for any omissions therein. The administrator did not make the application, which Boyd wanted made. The ap-

plication was made by a creditor, whose demand for $1,604.05 had been proved up, and assigned to the fifth class of claims against the estate. . It was sworn to. Notice thereof was given verbally to the administrator before the application was made, and no objection was taken to it at the hearing. The objection is also made that the notice required by section 131, laws 1859, page 38, of the hearing of the application to sell real estate, was not given, and that therefore the sale was void. The point made was, that the notice, as published, fixed the *first day* of January 1861 as the day on which the application would be heard. The order of publication was made in November 1869, and the notice dated the 9th of that month. The next term after November, at which the application must be heard, commenced on January 7th 1861, and not on January 1st, of that year. The law then in force required the January term of the court to commence on the 1st Monday of January; and as the notice ordered all persons interested to make their objections to the application for sale of the real estate "on or before the January term to be held on the 1st day of January 1861," and as no orders were made as to said application, under said notice, until the said January term 1861, the mistake as to the time the court was to convene at its January term, after the publication of the notice, could not have misled any one, and did not invalidate the proceedings. *Mowry v. Sanborn,* Court of Appeals of N. Y.; vol. 4, C. L. J. 394.

Various other objections were also made to the proceedings had in the probate court, but as in our view such defects were mere irregularities, in no way affecting the jurisdiction of the court, we think it unnecessary to mention them in detail, as we have in this opinion passed upon the most important exceptions submitted. Section 141, laws of 1859, page 29, provided, "that if the report of the administrator of the proceedings of a sale of real estate made by him be approved by the probate court, such sale shall be valid, and the administrator shall execute and deliver to the purchaser a deed reciting the order of sale, and the court by

8. Recitals, when evidence.

L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.

which it was made, the certificate of appraisement, the advertisement, the time and place of sale, the report of the proceedings, and the consideration, and conveying to the purchaser all the right, title and interest which the deceased had in the same." In this case the sale was approved by the court, and the recitals of the administrator's deed on file at the date of the purchase by Johnson fully met the requirements of the statute. Section 142 made the deed evidence of the facts therein recited; and the matters so set forth in accordance with section 141, in the deed, are *prima facie* true without further proof.

The judgment must be affirmed.

All the Justices concurring.