NIC DEETJEN v. RUDOLPH RICHTER.

PURCHASER OF REAL ESTATE; *Sufficient Notice.* Where the owner of
real estate, holding title under an unrecorded deed, is in the possession
thereof by his tenant at the time of the execution of a deed to a subse-
quent purchaser under legal proceedings divesting his vendor of his sup-
posed title, and such subsequent purchaser has actual notice at the date
of the sale from the tenant cultivating the land that he leases the same,
giving the name of his landlord, *held,* that this is sufficient notice to
such subsequent purchaser to put him upon inquiry as to the title; and
therefore he is not entitled to protection as a *bona fide* purchaser without
notice.

*Error from Clay District Court.*

ACTION by *Richter* against *Deetjen* in the nature of ejectment,
commenced December 5, 1882, to recover possession of lots 2,
6 and 9 of section 5, in township 7 south, of range 2, in Clay
county. Trial at the May Term, 1883, before the court, a jury
being waived. The court found the following conclusions of
fact:

"1. That a patent was issued for lots 2, 6 and 9 in section
5, township 7, in range 2, east of the sixth principal meridian,
in Clay county, Kansas, to the plaintiff, Rudolph Richter, on
the 15th day of August, 1876.

"2. That on the 3d day of May, 1879, the plaintiff made
a warranty deed to said premises to his daughter, Lydia Rich-
ter, which was a mere voluntary conveyance, for which there
was no consideration. This deed was recorded on the same
day, viz.: May 3, 1879.

"3. That on the first day of April, 1881, a mortgage on
said premises for the sum of $45, and due April 1, 1886, was
executed by Lydia Richter to Underwood, Clark & Co., and
on the same date another mortgage, for the sum of $300, was
executed by said Lydia Richter to the Scottish American
Mortgage Co., due April 1, 1886, both of which mortgages
were recorded on the 1st day of April, 1881.

"4. That on the 18th day of June, 1881, said Lydia Rich-
ter reconveyed said premises to plaintiff by warranty deed,
which deed was recorded October 10, 1882, the plaintiff as-
suming the payment of said mortgages, which was the only
consideration for said deed and reconveyance, except that said

plaintiff told said Lydia Richter that unless she reconveyed, he would sell his personal property and leave her. Plaintiff had no way to provide for said Lydia except said land.

"5. That on the 31st day of May, 1882, such proceedings were had as that the said Lydia Richter was found to be insane, and ordered by the probate judge of Clay county, Kansas, to be committed to the insane asylum of the state of Kansas, and she was accordingly sent to said asylum, and has remained there ever since said time.

"6. That afterward such proceedings were had as that George W. Martin was appointed guardian of said Lydia Richter, and by appropriate proceedings thereafter the premises in question were sold to the defendant Deetjen, to pay the costs of the proceedings wherein said Lydia Richter had been adjudged insane; and the said probate judge having approved the proceedings, a deed was made by said guardian to said defendant for said premises, on the 3d day of August, 1882, and filed for record on the 3d day of August, 1882, the terms of said sale being the payment of $300 cash, and the assumption of the payment of the said mortgages, which said $300 cash was paid by the defendant, and said mortgages also were paid off by him on the 4th day of October, 1882; the said mortgages at the time amounting to the sum of $350, and $—— interest and principal, had previously been paid upon said mortgages, making in all the sum of $—— paid by him thereon; also, one-half the taxes for the year 188– were paid by defendant, amounting to $——.

"7. That until the time said Lydia Richter was found to be insane, by said proceedings in said probate court, she and her father, the plaintiff, resided upon said premises, plaintiff having no other family. But the cultivated ground upon said premises had been leased for that season by plaintiff, to one Stober; the lease to Stober was made in the spring of that year, to wit, in the year 1882, and the fact that said Stober was farming said land as the tenant of Rudolph Richter was known to said defendant at the time, but he did not have actual notice of the deed from Lydia Richter to plaintiff, nor did he inquire into the title, although he knew, as stated, that Stober was farming said premises as the tenant of said Rudolph Richter, and that said Rudolph Richter and Lydia had resided upon said land continuously from the date of said patent from the United States until said Lydia was found to be insane.

"8. That at the time defendant showed plaintiff his deed,

after he had obtained the same from the said guardian of Lydia Richter, plaintiff gave defendant one of the keys to the house upon said premises, and said Stober gave him the other of said keys. Plaintiff at the same time also gave defendant a notice which he had received · of an installment of interest being due upon said mortgage, and told him to pay it. At the time of doing this, plaintiff was not in good health, and was considerably excited and quite nervous.

"9. That the amount paid on said mortgages has never been tendered back to defendant by plaintiff, or anyone in his behalf, nor has plaintiff ever demanded possession of said premises from the defendant."

The court thereon made the following conclusions of law:

"1. That the defendant, if he desires to do so, should be allowed to file an amended answer herein, to correspond with the facts as found by the court, so as to ask to be subrogated to all the rights of the mortgagees in said mortgages paid off and discharged by said defendant, and setting aside the release of said mortgages.

"2. That if such amended answer is filed, that then the defendant will, as matter of law, be entitled to relief of the character mentioned in the preceding conclusion of law.

"3. That the plaintiff is entitled to a judgment for the possession of the premises in question, notwithstanding his deed was unrecorded at the time of the purchase at guardian's sale by defendant, for the reason that he knew said Stober was tenant of said premises under said plaintiff, and was therefore bound to inquire as to plaintiff's title, and was bound to take notice of plaintiff's title by reason of plaintiff's living upon said land and the land being farmed by said tenant.

"4. That plaintiff is entitled to a judgment against said defendant for costs of suit."

To all and each of said conclusions of fact and of law, the defendant at the time duly excepted. Afterward the court rendered judgment that the plaintiff recover of the defendant the land described in the petition, together with his costs in the action. The court, however, under the amended answer filed by the defendant, adjudged that the amount of the mortgages given by Lydia Richter upon the premises, together with all taxes paid by the defendant, were a lien in favor of

the defendant upon the land.   The defendant excepted, and brings the case here.

*Harkness & Godard,* for plaintiff in error.
*C. M. Anthony,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The deed from which Rudolph Richter deduced his title was prior, in point of time, to that of Deetjen, but as it had not been recorded at the time of the guardian's sale, the question is, did Deetjen, at his purchase, have actual or constructive notice of the title of Rudolph Richter in the premises?   In other words, did he obtain his deed under such circumstances that he is bound to know the title that Rudolph Richter has to the premises?   It appears that Rudolph Richter and his daughter Lydia had lived together as father and daughter upon the premises from the time the land was patented until the daughter was declared insane, and there were no other members of the family.   Counsel claim that the evidence before the trial court was not sufficient to charge Deetjen with notice, or even to make him suspect that Rudolph Richter had any claim upon the land.   The evidence shows that the plow-land had been leased for the season of 1882 to Charles Stober, the lease being made in the spring of that year.   Deetjen testified that "He knew that Stober was working a part of the Richter place during the summer of 1882; that sometime during the summer, before his purchase, Stober told him he rented the land from Rudolph Richter; that at the time, he knew Rudolph Richter and his daughter were living together on the premises."   Charles Stober testified that "He rented the plow-land for the season of 1882, from Rudolph Richter; that during the summer of 1882 he had a conversation with Deetjen, in which he told him that he rented the plow-land on the place from Rudolph Richter."   He further testified, that "During that season he worked the plow-land on the premises."

We think, therefore, that the evidence was sufficient to sus-

tain the finding of the trial court that "the fact that said Stober was farming the land as the tenant of Rudolph Richter was known to Deetjen at the time of his purchase;" and we also think that the trial court did not err in deciding that "as Deetjen knew that Stober was in the possession of the premises as the tenant of Rudolph Richter, he was bound to inquire as to Rudolph Richter's title." (*Johnson v. Clark*, 18 Kas. 157; *School District v. Taylor*, 19 id. 287; *Greer v. Higgins*, 20 id. 420.)

We have already held that the open, notorious and exclusive possession of real estate under an unrecorded deed requires a subsequent purchaser to take notice of the occupant's title. We do not understand the rule to be that a person must actually reside upon the land to make his possession notice; he may actually improve and cultivate it, and perform open, notorious and decided acts of ownership over it without residing upon it; he may cultivate and improve it by a tenant, for the possession of the tenant is his possession. There is some conflict in the authorities whether the possession of a tenant under a lease is notice simply of his tenancy, or of his tenancy and also of his landlord's title. But "there seems no good reason why, if it be admitted that possession is notice, or evidence of notice, there should be any modification of the rule that the possession by the tenant is the possession of his landlord. If the purchaser has followed up the suggestion which the possession of the premises by a third party implies, he will inquire of the actual occupant with the probability of learning that he holds as lessee of another. Inquiry cannot safely stop here, for the next step suggested by the circumstances would be to inquire of the landlord." (Wade on Notice, § 286; 1 Hilliard on Vendors, 4, subdivs. 3 to 8; *Wickes v. Lake*, 25 Wis. 75; 1 Jones on Mortgages, § 600; *Bank v. Flag*, 3 Barb. 316; *Wright v. Wood*, 23 Pa. St. 120.) Deetjen had notice that Stober leased from Rudolph Richter, and this was notice that Rudolph Richter was in possession by his tenant. If Deetjen had made proper inquiries, he would have been led to the knowledge of the fact that Rudolph Richter had the title to

the premises. Information which makes it the duty of a party to inquire, and shows where such an inquiry may be effectual, is notice of all the facts which might be thereby ascertained. No purchaser of real estate is at liberty to remain intentionally ignorant of facts relating to his purchase within his reach, where the property is in the actual, open, visible, notorious and exclusive possession of another, and then claim protection as an innocent purchaser. The presumption of law is, that upon inquiry he will ascertain the true state of the title.

We do not find anything in the record tending to show that Charles Stober gave up the possession of the land leased by him before the purchase thereof by Deetjen, or that Rudolph Richter had in any way prior to that time abandoned the premises. The latter did not actually live upon the land after his daughter was adjudged insane, but that he and his tenant were in possession thereof is shown from the circumstances that Deetjen, in order to get possession of the house on the premises, obtained the keys thereof from Richter and Stober, and that the latter was cultivating the premises all the season as Richter's tenant. Deetjen did not claim any right or possession of the premises upon the trial under a lease, or as a tenant, and therefore upon the issues before the court, the turning over of the keys of the premises did not prejudice Richter's rights.

With the permission of the trial court, Deetjen was authorized to file an amended answer so.as to be subrogated to all rights under the mortgages which he had paid off, and therefore his equities by such order were fully protected.

The other matters referred to in the briefs do not need comment.

The judgment of the district court will be affirmed.

All the Justices concurring.