W. B. Penrose, *Appellee*, v. S. W. Cooper *et al.* (S. W. Cooper, *Appellant*).

No. 17,215.

SYLLABUS BY THE COURT.

1. JUDGMENT—*Ejectment—Res Judicata—Tax Deed.* A decision is conclusive and binds the parties upon the facts as shown to exist when the case was tried. If upon a retrial a different state of facts is shown to exist the law declared in the former decision may have no application.

2. ——— *Same.* A decision of the supreme court holding a tax deed valid on the ground that it was five years old is not conclusive or binding upon the parties where it is shown on a retrial of the action or in another action between the same parties that the deed was of record less than five years when it was attacked.

3. PURCHASER—*Tenant in Possession—Title—Notice—Due Diligence.* Although the possession of a tenant is the landlord's possession, it is not of itself notice of the landlord's title, but is sufficient notice to put a person about to deal with the title upon inquiry.

4. ——— *Same.* The law presumes that one who is about to deal with real estate has either made inquiry of the occupant's right, or has been so negligent that he can not be regarded as a *bona fide* purchaser. This presumption, however, is a mere inference of fact which may be rebutted by proof that the purchaser made diligent inquiry and failed to discover the prior right.

5. ——— *Same.* Possession alone, if open, notorious, and exclusive, is sufficient notice unless the subsequent purchaser shows that he pursued the inquiry with proper diligence and failed to obtain knowledge of the unrecorded instrument or of the right of the parties claiming under it.

6. ——— *Same.* The plaintiff, who occupied the relation of a purchaser without actual knowledge of an unrecorded deed, inquired of the tenant and learned the name of the agent to whom the tenant paid rent. Relying upon his knowledge of the fact that the same person had been, until a short time before that, managing the property as agent for the record owner of the title, he failed to make any inquiry of the agent to learn the name of the owner. Upon these facts it is held that the question whether he acted with due diligence was one of fact for the jury to determine and not of law for the court.

Appeal from Sedgwick district court. Opinion filed March 9, 1912. Affirmed.

*Stanley, Vermilion & Evans, J. A. Brubacher,* and. *J. A. Conly,* for the appellant.

*S. W. Shattuck, jr.,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The property in controversy consists of two lots in the city of Wichita. Plaintiff's title rests upon a tax deed to The Hartford Western Land Company, dated November 28, 1896, recorded December 7, 1896, a quitclaim deed from the tax-title holder to The Anthony Investment Company, dated September 10, 1898, and a quitclaim deed from The Anthony Investment Company to plaintiff Penrose, dated October 2, 1901, which was recorded April 7, 1909. The plaintiff proved these conveyances and that possession was taken under the tax deed September 10, 1898, and held continuously until February, 1904, when defendant Cooper obtained possession without plaintiff's knowledge or consent and after a tenant of plaintiff had vacated the premises without plaintiff's knowledge.

Defendant Cooper's title rests upon *mesne* conveyances from the government. It appeared that two deeds from former proprietors conveying the property to him were executed and delivered with the name of the grantee omitted; but the defendant offered evidence

to show that the instruments were delivered with authority on his part to insert his name as grantee.

The defendant objected to the introduction of the tax deed as evidence on the ground that it was invalid for reasons appearing upon its face, which, however, do not require specific mention here. The objection was overruled. There was a trial to a jury and a verdict for the plaintiff. The jury also returned a number of special findings.

It is claimed that the court erred in admitting the tax deed in evidence over the objections of the defendant, and in not adjudging the tax deed void. The same deed was before this court in *Penrose v. Cooper,* 71 Kan. 720, 725, 81 Pac. 489, 84 Pac. 115. That was an action in ejectment in which Cooper was plaintiff and Penrose defendant and involved the same property. Cooper recovered and Penrose appealed. On the first hearing the tax deed was held void on its face and the judgment was affirmed. Upon rehearing it was held that the deed having been of record five years before it was attacked, the defects were cured by inferences fairly to be drawn from a consideration of the entire instrument; and, therefore, the judgment was reversed and a new trial ordered with directions to admit in evidence the "five-year-old tax deed." (p. 727.)

That action has not been retried, but is still pending, the proceedings having been stayed by the district court to await the final disposition of the present action, which was commenced by Penrose as plaintiff, February 10, 1906, immediately following the mandate in the former case. When the former action was here the record showed that the petition was filed in the district court December 9, 1901, which was two days more than five years after the tax deed was recorded. It appears from the abstract in the case before us that since the former action was remanded the district court, by an order *nunc pro tunc,* has corrected the record so as to show that the petition in fact was filed December 4,

1901. It is obvious, therefore, that had the record when that case was before the court spoken the truth the tax deed would have been held void, since it was not five years old when Cooper brought his action.

Under these circumstances appellee's contention that the former decision of this court is *res judicata* can not be sustained. The decision is conclusive and binds the parties upon the facts as they were shown to exist when the case was first tried. If on the retrial a different state of facts is shown to exist the law declared in the former decision may have no application. (*Cahn v. Tootle,* 58 Kan. 260, 48 Pac. 919.) This court did not determine Penrose to be the owner of the property; nor did it direct judgment in his favor. On the contrary the cause was remanded for another trial with directions to admit in evidence the five-year-old tax deed. If upon the second trial it appear that the tax deed was in fact less than five years old when it was attacked, the trial court, upon the principles of law declared on the first decision (*Penrose v. Cooper,* 71 Kan. 720, 725, 81 Pac. 489, 84 Pac. 115), would be bound to adjudge that on the fourth day of December, 1901, the deed was void. The real question is whether W. B. Penrose is bound by the proceedings in the first ejectment suit from the date the action was begun, or only from December 9, 1901, when he was first made a defendant. To determine this question a further statement of facts is required.

The Anthony Investment Company held the tax title and was in possession of the premises. From March 25, 1901, S. W. Shattuck, jr., had control of the property and leased the same and collected the rents as agent for the company. On October 2, 1901, The Anthony Investment Company conveyed the property by quitclaim to W. B. Penrose. The deed was sent to S. W. Shattuck, jr., as the agent of Penrose, who was a nonresident. Shattuck did not record the deed, but took pains to inform the tenants sometime after he received

it that he was collecting the rents for W. B. Penrose. He withheld the deed from record until after the tax deed was five years old and after Cooper's action in ejectment was commenced.  In fact it was not recorded until 1909.

In the proceedings to correct the record in *Cooper v. Penrose* it was shown that the petition with the præcipe for summons was deposited in the clerk's office December 4, 1901.  The deputy clerk with whom they were left did not file them when they should have been filed, but afterwards put thereon the file-mark with a stamp showing that they were filed December 7, although the trial court finds that they were actually filed December 4, 1901.  The evidence taken at the same time shows that on the evening of December 7 Mr. Shattuck went to the clerk's office and found the papers there in the possession of Grant Knepple, deputy clerk. The action had not yet been entered upon the appearance docket.  It was afterwards entered on the appearance docket, December 9, and with a pen the deputy clerk changed the date in the file-stamp from December 7 to December 9, but when he did this is not shown. Mr. Shattuck testified that on the evening of December 7, when he went to the clerk's office and found the papers there, Mr. Knepple told him that Mr. Brubacher had requested that the papers be not filed until he, Brubacher, should furnish a journal entry, showing the dismissal of a similar action in October previous.  On December 9 Shattuck informed Brubacher, the attorney of Cooper, that Penrose had an interest in the property.  Brubacher at once amended the petition and made Penrose a defendant.  By this time the tax deed was more than five years old.

The jury had before them all the facts concerning the commencement of the former action.  Their general verdict is in favor of Penrose.  Included in their special findings are findings to the effect that Cooper did not know of the change in title prior to December 9, 1901;

that he went to the premises about December 1, 1901, to ascertain the rights of the occupants therein and who their landlord was; that he did not ascertain from the tenants that there had been any change of title or interest; that he knew that Shattuck had been acting as the agent of The Anthony Investment Company in collecting the rents and managing the property. They also state, in answer to another question, that they do not believe that Cooper had reasonable grounds for believing that Shattuck was still collecting the rents for the company. In another answer they say they do not believe that Cooper, before bringing his action, used ordinary care and prudence to ascertain whether or not any other person had or claimed any interest in the property.

The appellant makes the contention that the finding of the jury upon the issue of due diligence is not conclusive because there is no dispute in the evidence or in the findings as to what Cooper did before bringing his action to ascertain the facts in reference to the title and possession. The jury have found not only as a fact that due diligence was not exercised, but they have also found every fact from which they have drawn that inference. It is stated as a challenge by the appellant in his abstract and brief that there was no fact or circumstance shown in the evidence putting appellant on inquiry or notice of the title or possession of Penrose, except as set forth in the foregoing statement. The record before us sustains the challenge. The appellant therefore urges that the situation presented is to some extent similar to that where the facts have been found or agreed to, and that in affirming the judgment we must either conclude that the facts show beyond cavil Cooper's failure to exercise due diligence, or that upon the facts reasonable minds might reach a different conclusion upon that question.

The recording act declares that conveyances of real estate not filed for record shall be void except as be-

Penrose v. Cooper.

tween the parties thereto and such persons as have
actual notice thereof. The courts have uniformly held
that "actual notice" as used in the act may be either
express or implied. (*Pope v. Nichols,* 61 Kan. 230, 59
Pac. 257; *Faris v. Finnup,* 84 Kan. 122, 113 Pac. 407.)
If the holder of an unrecorded deed is in the open,
notorious, exclusive possession of the premises, a sub-
sequent purchaser, and all others, have such implied
notice of his rights as will amount to actual notice of
his title. (*Deetjen v. Richter,* 33 Kan. 410, 6 Pac. 595;
*Stough v. Lumber Co.,* 70 Kan. 713, 79 Pac. 737; *Lang
v. Adams,* 71 Kan. 309, 312, 80 Pac. 593.)

The English rule is that possession by the tenant is
notice simply of his tenancy, and never notice itself of
the title of the lessor. And the English courts have
held that it is not incumbent upon the purchaser to ask
tenants found in possession to whom they pay their
rent. (*Hunt v. Luck* [1900], 1 Ch. 45, 70 L. J. Ch.
30; Note, 13 L. R. A., n. s., 99.) There is great con-
fusion and conflict among the American cases. Some
follow the English rule; others hold that the possession
of the tenant is the possession of the landlord, and that
notice of the former is notice of the latter as fully as his
own possession would be. (*Glendenning v. Bell,* 70 Tex.
632, 8 S. W. 324. See, also, Note, 13 L. R. A., n. s.,
100.) We think the better rule, and one which finds
abundant authority for its support, is that although
possession by a tenant is the landlord's possession, it
is not itself notice of the landlord's title, but is, how-
ever, sufficient notice to put a person about to deal with
the title upon inquiry. The law presumes that, having
notice of the possession, he has either made inquiry
and ascertained the extent of the occupant's right, or
has been so negligent that he can not be regarded as
a *bona fide* purchaser. This presumption, however, is
but a mere inference of fact which may be rebutted by
proof that the purchaser made diligent inquiry and
failed to discover the prior right. (*Williamson v.*

*Brown,* 15 N. Y. 354; *Betts v. Letcher et al.,* 1 S. Dak. 182, 46 N. W. 193; *Fair v. Stevenot,* 29 Cal. 486.) Thus, in *Thompson v. Pioche,* 44 Cal. 508, it was held that although the possession of a tenant is not of itself notice of the landlord's title, yet such possession is sufficient to put a person dealing with the property upon inquiry, and is proof of notice, unless it is shown that the inquiry, having been prosecuted with due diligence, did not disclose the title of the landlord.

Possession is notice and necessitates inquiry, which must be prosecuted with due diligence. In *Deetjen v. Richter,* 33 Kan. 410, 6 Pac. 595, it was held under the facts in that case that due diligence required the purchaser to follow up the suggestion implied from information obtained from the tenant, by making further inquiry of the landlord. Through inquiry of the tenant the purchaser learned the name of the landlord; and it was said in the opinion, quoting from section 286 of Wade on Notice: "Inquiry can not safely stop here; for the next step suggested by the circumstances would be to inquire of the landlord." (p. 414.)

The jury evidently applied to the facts here the rule declared in that case and doubtless believed that under all the circumstances in evidence Cooper should have followed up the information and inquired of Shattuck who the owner was whom he represented. We must affirm the judgment unless we can say as a matter of law that due diligence did not require him to make further inquiry. It is not a question of law, but one of fact, which has been determined by the jury. It is no longer an open question. It is true that there is no conflict in the evidence or the findings as to just what inquiry was made, but the inference to be drawn from those facts is for the jury and not for the court. It follows, therefore, that the judgment must be affirmed.

PORTER, J. (dissenting) : Cooper had commenced one ejectment case against The Anthony Investment Company early in the year 1901. At that time the com-

pany owned the tax title of record and was in posses-
sion.  S. W. Shattuck, jr., appeared as its attorney.
The purpose of the action was to defeat the tax deed,
which would not for several months become five years
old.  That suit was dismissed by the plaintiff Octo-
ber 1, 1901, without prejudice.  The next day the in-
vestment company made a quitclaim deed conveying
the property to W. B. Penrose.  W. H. Hurd was the
president of The Anthony Investment Company.  His
deposition was taken and read as evidence in the pres-
ent case.  He testified that on March 25, 1901, acting
for the company, he employed S. W. Shattuck, jr., of
Wichita, as agent to lease the property and collect the
rents, and that October 2, 1901, as president of the
company, he made a quitclaim deed for the property to
W. B. Penrose, and that a few days after the deed was
executed he sent it to Shattuck and employed Shattuck
to lease the property and collect the rents as agent of
Penrose.

W. B. Penrose is the son-in-law of W. H. Hurd, and
lives in San Diego, Cal.  Shattuck testified that he
acted as the agent of The Anthony Investment Company
in managing the property from March 25, 1901, and
that the last rent he collected for the company was on
November 18, 1901.  This was sixteen days before the
second suit was filed.  From November 18, 1901, he
says he represented W. B. Penrose, with whom he had
no acquaintance, having been employed to act for him
by the president of the investment company.  He re-
ceived through the mail a short time thereafter the
following paper:

"ANTHONY, KANSAS, October 2nd, 1901.

"S. W. Shattuck, jr., of Wichita, Kansas, is hereby
authorized to act as my agent and attorney under *direc-
tion of W. H. Hurd of Anthony, Kansas*, to take charge
of Lots 26 and 28 N. Fourth Avenue, Hilton's Addition
to City of Wichita, Kansas, as shown by the recorded
plat thereof, for the purpose of leasing and otherwise
controlling the same; to collect rents, make repairs,

pay taxes and to act as attorney-at-law in any suit or matter pertaining to my possession or title in the above-named property.—W. B. PENROSE."

The second suit in ejectment was filed December 4, 1901. Shattuck withheld the Penrose deed from record, but testifies that he informed the tenants of the change in ownership, serving them with written notice to that effect. On December 9, 1901, after the tax deed was past five years old, he informed the attorney for Cooper that Penrose owned the property, and the attorney at once amended the petition by making Penrose a defendant. In *Deetjen v. Richter,* 33 Kan, 410, 6 Pac. 595, referred to in the opinion as controlling, it was held, under the peculiar facts of that case, that Deetjen could not safely stop with the inquiry of the tenant, because he had notice that the tenant leased from Richter, and this was notice that Richter was in possession through his tenant, and proper inquiry would have disclosed the knowledge of Richter's title. In the present case, the relationship of Penrose to the president of the investment company; the employment of the same agent to manage the property; his failure to record the deed; the pains taken to notify the tenants, who were in nowise interested, of the change of title; the failure to inform Cooper's attorney of Penrose's title until after the appearance docket showed the commencement of the suit on December 9, and all the circumstances, indicate to my mind the purpose of the transfer and failure to record the deed, and also show that any further inquiry which Cooper might have made would not have disclosed the name of Penrose as owner. Whenever it appears that further inquiry would have proved fruitless, diligence has been exercised.

"Where a party could not have learned the facts by inquiry, he is not prejudiced because he did not inquire." (*Lower's Appeal,* [Pa. Supr. Ct.] 1 Walk. 404, syl.)

Penrose v. Cooper.

That he had notice is merely a presumption of law which he may rebut by showing other circumstances which would naturally arrest further inquiry.

"Where circumstances are brought directly home to the knowledge of a purchaser, sufficient to put him upon inquiry, and thus amount to notice, he will be entitled to rebut the presumption of notice which would otherwise arise, by showing the existence of other and attendant circumstances of a nature to allay his suspicions, and lead him to suppose the inquiry was not necessary.

"Where the circumstances relied on as sufficient to charge a party with notice, by requiring him to make inquiry, may be equally as well referred to a different matter or claim, as to the one he is sought to be chargeable with notice of, they will not be sufficient." (*Chadwick v. Clapp*, 69 Ill. 119, syl. ¶¶ 2, 3.)

In *Cook v. Travis*, 20 N. Y. 400, it was said:

"It is quite true, generally, that the law regards the actual occupancy of land as equivalent to notice to all persons dealing with the title, of the claim of the occupant. But this is not an absolute proposition which is to be taken as true in all possible relations. The circumstances known may be such that the occupancy will not suggest to a purchaser an inquiry into the title or claim under which it may be held; and when the inquiry may be omitted in good faith, and in the exercise of ordinary prudence, no one is bound to make it. Possession out of the vendor and actually in another person only suggests an inquiry into the claim of the latter. Ordinarily that inquiry should be made, because it evinces bad faith or gross neglect not to make it. But the question in such cases is one of actual notice, and such notice will be imputed to a purchaser only where it is a reasonable and just inference from the visible facts." (p. 402.)

It is well established that where inquiry is made which results in information that the possession is held by a tenant of one who has placed upon the record the evidence of his right to occupy, inquiry is arrested at that point. (*Fargason v. Edrington*, 49 Ark. 207, 4 S. W. 763; *Woods v. Farmere*, [Pa. Supr. Ct.] 7 Watts,

.382, 32 Am. Dec. 772; Wade on Notice, 2d ed., §§ 297, .298.) Again, the doctrine has often been declared that where anything appears of record to justify the possession, the latter will not be evidence of anything further (*Knox v. Thompson*, 11 Ky. 351, 13 Am. Dec. 247; *Woods v. Farmere*, supra), and if the record title is in the vendor, and he is in the apparent possession of the land, there is no presumption of title out of the vendor, and no inquiry need be made of other persons as to their title (*Smith v. Yule*, 31 Cal. 180, 89 Am. Dec. 167). It has also been held that where the tenant is in possession, and the purchaser makes due inquiry, which fails to disclose the fact of tenancy, the purchaser is not chargeable with notice of the tenancy. (*Thompson v. Pioche*, 44 Cal. 508.) In *Rogers v. Jones*, 8 N. H. 264, Parker, J., used this language:

"To say that he was put upon inquiry, and that having made all due investigation without obtaining any knowledge of title, he was still chargeable with notice of a deed, if one did really exist, would be absurd." (p. 269.)

The present case is easily distinguished from the Deetjen case by the fact that Cooper not only did not learn the name of the actual landlord, but the notoriety of the particular claim under which Shattuck had been in charge of the property was sufficient to account for the possession and for Cooper's being lulled into the belief that there had been no change therein. The courts have frequently been called upon to determine the extent of diligence required of one about to deal with the title to real estate under similar circumstances, and have held that if the possession is naturally accounted for as the possession of the record title holder by facts and circumstances known to the person about to deal with the title, the latter may inquire no further and still be in the exercise of due diligence. So it has been held that where the particular claim is notorious and sufficient to account for

the possession, diligence does not require one to speculate as to the existence of some other claim under which the same person may be in fact holding possession. (*Lincoln v. Thompson,* 75 Mo. 613; *Fargason v. Edrington,* 49 Ark. 207, 4 S. W. 763; *Woods v. Farmere,* [Pa. Supr. Ct.] 7 Watts, 382, 32 Am. Dec. 772.) The test of diligence in each case must be the question, How would a reasonably careful and prudent person naturally proceed under the facts and circumstances of which he had knowledge? Shattuck's secret attornment to Penrose occurred less than two weeks before Cooper made inquiry of the tenants. There was no apparent change in the possession or in the character of Shattuck's agency. Possession was still held by the tenants of some person; and upon inquiry the tenants themselves informed Cooper that they paid rent to one whom Cooper had reason to believe was still the agent of the investment company. He had no reason for supposing that the agent might be representing some one else. Viewed in the light of the actual and known facts with respect to Shattuck's agency for The Anthony Investment Company, the record owner, I think there was nothing to suggest further inquiry to a person acting with ordinary and usual diligence.

Where the jury make a special finding that the party against whom they return a general verdict has failed to exercise due diligence in a matter and that is the controlling issue of fact, and other findings are made showing all the facts upon which evidence was offered and from which such inference must necessarily have been drawn, and where it is apparent that the jury have misconstrued the effect of the evidence, and the findings conclusively show that the appellant has exercised what under the circumstances constitutes in law due diligence, the verdict should be set aside and judgment directed for appellant.

Suppose the findings showed that Cooper was told by the tenants that they paid rent to The Anthony Invest-

ment Company through its agent, Shattuck, and the jury had found, notwithstanding, that he had failed to exercise due diligence, because, knowing the name of the agent, he should have followed up the suggestion and have inquired whether or not the company was still the owner. In such a case it would manifestly become our duty to disregard the finding and declare that he had acted with proper diligence and had overcome the presumption of notice. By repeated decisions this court has held that where the facts are undisputed and only one inference is to be drawn from them the conclusion to be drawn therefrom is for the court. (*Kansas Pacific R. Co. v. Butts*, 7 Kan. 308; *K. P. Rly. Co. v. Pointer*, 14 Kan. 37; *Dewald v. K. C. Ft. S. & G. Rld. Co.*, 44 Kan. 586, 24 Pac. 1101; *Cummings v. Railroad Co.*, 68 Kan. 218, 74 Pac. 1104; *Railroad Co. v. Brown*, 73 Kan. 233, 84 Pac. 1026.) I think the facts show a premeditated design to cover up the title in order to prevent Cooper from asserting the invalidity of the tax deed until after it was five years old, and that nothing short of extraordinary diligence and activity on his part would have disclosed the true state of the title. Penrose, by failing to place his deed on record or to bring notice of his claim under it to Cooper prior to the commencement of the action must, I think, be regarded as a purchaser *lis pendens* and bound by the proceedings from December 4, 1901, the date the action was in fact commenced. (*Smith v. Worster*, 59 Kan. 640, 642, 54 Pac. 676; *Utley v. Fee,* 33 Kan. 683, 7 Pac. 555; *Caldwell v. Bigger*, 76 Kan. 49, 90 Pac. 1095.) In other words, as to Cooper the title and estate of Penrose under his unrecorded deed was wholly in the grantor, The Anthony Investment Company. Nor can there be any doubt that Cooper, as defendant in the present action, may rely for a defense upon the same claim he asserted as plaintiff in the former action. The controversy is between the same parties and exactly the same questions are involved. (*Myers v. Coonradt*,

28 Kan. 211, 216.)   The tax deed being void on its face (*Penrose v. Cooper*, 71 Kan. 720, 725, 81 Pac. 489, 84 Pac. 115) Penrose's title fails.

The judgment should be reversed and the cause remanded with directions to enter judgment for the defendant.

SMITH, J., and WEST, J., also dissent.