No. 30,953.

S. R. STALCUP, *Appellant*, v. MATTIE MAY STALCUP, R. C. GATES et al., *Appellees.*

(19 P. 2d 447.)

Opinion filed March 11, 1933.

*Robert Garvin, Evart Garvin* and *Morris Garvin,* all of St. John, for the appellant.

*R. C. Russell,* of Great Bend, *Paul R. Nagle* and *Arthur R. Gates,* both of St. John, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to set aside a deed from a daughter to her father to a tract of land conveyed to her by her father about two and one-half years earlier, in which the plaintiff claims to be the owner of a half interest, and to have the daughter declared to be a trustee for the plaintiff's half interest therein and directed to execute and deliver to plaintiff a good and sufficient deed therefor. The trial court made findings of fact and conclusions of law and rendered judgment thereon in favor of the defendants, from which the plaintiff appeals.

The plaintiff, S. R. Stalcup, was a farmer, who for seven years lived with his brother and family in Stafford county, and was engaged with his brother in farming land belonging to his brother's wife and, also, some land the plaintiff had rented. The name of the brother's wife was Mattie May Stalcup, and she was the daugh-

ter of R. C. Gates, both of whom are defendants in this action. They kept their funds in one account in a neighboring bank in the name of the brother of the plaintiff. After the purchase of the land in question by the daughter from her father, plaintiff continued with his brother farming the land they previously had and this new quarter section, dividing the crops on this new quarter, the plaintiff getting half of it. He paid half the interest on the mortgage of $6,000 assumed thereon and half the taxes for two and one-half years, sending one interest check directly to defendant R. C. Gates.

The following findings of the trial court have special reference to the questions involved in this appeal:

"4. The court finds that the defendant, Mattie May Stalcup, purchased the above-described real estate from the defendants, R. C. Gates and wife, on September 24, 1928, and said deed was made subject to the following conditions:

" 'Said party of the second part hereby agrees to assume six thousand dollars of a certain twenty-four thousand dollar mortgage, on all of section 35-21-13 to The Prudential Insurance Company of America, . . . ;'

that the consideration for said sale and conveyance of said land from R. C. Gates and wife to the defendant Mattie May Stalcup was twelve thousand dollars, of which the defendant Mattie May Stalcup assumed six thousand dollars, or one-fourth of a twenty-four thousand dollar mortgage, on said real estate, agreed to pay R. C. Gates one thousand dollars, and that the said Mattie May Stalcup paid five thousand dollars to the said R. C. Gates in cash, and that she obtained the said five thousand dollars in cash by mortgaging some real estate that she owned in her own right and that she owned at the time she married plaintiff's brother.

"5. The court finds that the plaintiff paid no part of the purchase price of said land which the defendant, Mattie May Stalcup, purchased from the defendant R. C. Gates, her father, being the real estate involved in this action.

"8. Plaintiff and Mattie May Stalcup, his sister-in-law, defendant herein, had business transactions relative to farming, and at or about the time the land was purchased from R. C. Gates by Mattie May Stalcup, plaintiff and Mattie May Stalcup figured up what was due the plaintiff and Mattie May Stalcup told plaintiff, and they agreed, that plaintiff had three thousand one hundred seventy-six dollars due him from Mattie May Stalcup, and the parties had a verbal agreement or understanding that plaintiff was to own a three-thousand-dollar or one-half interest in the above-described real estate, provided he paid out his share of the mortgage on the land.

"9. The land was to be kept in the name of Mattie May Stalcup, so when Mattie May Stalcup bought plaintiff out, a new deed would not have to be given.

"10. Mattie May Stalcup offered to give plaintiff a deed for a one-half interest in said real estate several times, but plaintiff said he did not desire a deed.

"13. The price of real estate declined rapidly on account of the present depression, and the mortgage on the real estate came due and the defendant R. C. Gates, defendant Mattie May Stalcup's father, was compelled to and did pay the mortgage on said real estate.

"14. On May 5, 1931, a divorce was granted Mattie May Stalcup from J. A. Stalcup, known as Burt Stalcup, brother of plaintiff, in the district court of Stafford county, Kansas; the evidence was introduced on April 25, 1931, and the decree rendered May 5, 1931.

"15. On April 1, 1931, and also under date of May 26, 1931, Mattie May Stalcup conveyed said real estate back to her father, R. C. Gates, by a general warranty deed; the deed of May 26, 1931, was recorded. The plaintiff knew of the conveyance from Mattie May Stalcup to R. C. Gates prior to the time the divorce case was tried.

"16. The consideration for the sale and conveyance of the real estate from Mattie May Stalcup to R. C. Gates, her father, was that R. C. Gates pay the mortgage assessed against the above-described real estate, which was a twenty-four thousand dollar mortgage on a section of land which covered the land in question, and the said R. C. Gates canceled the one thousand dollars which his daugther, Mattie May Stalcup, owed him; and the said R. C. Gates further orally agreed to pay the five thousand dollar mortgage indebtedness which the defendant, Mattie May Stalcup, put on her real estate at the time she purchased the land from her father and which she paid her father, R. C. Gates.

"17. The land in question, at the time of the trial of this action, was worth approximately nine thousand dollars.

"18. The court finds that from the time Mattie May Stalcup purchased from R. C. Gates in 1928 the land in controversy, and up until the spring of 1931, plaintiff had never had any conversation with R. C. Gates in which plaintiff told R. C. Gates that he had bought a half interest in the quarter section of land involved in this controversy; and the evidence is not clear that the defendant R. C. Gates ever knew that plaintiff and his daughter had had any conversation or agreement relative to the land in question.

"19. All the negotiations between the plaintiff and defendant Mattie May Stalcup were oral.

"20. The defendant R. C. Gates is in possession of the real estate.

"21. The defendant R. C. Gates has already paid the twenty-four thousand dollar mortgage, of which the defendant Mattie May Stalcup had assumed six thousand dollars in the deed, and has canceled the one thousand dollars due him, and has agreed to pay the five thousand dollar mortgage indebtedness owed by Mattie May Stalcup.

"22. The court finds that no fraud was practiced by R. C. Gates in any of the transactions related herein.

"23. The court finds that the plaintiff was not indebted to any person; and there was no fraud practiced by him in any of the transactions related herein, and the agreement between Mattie May Stalcup and plaintiff was free from fraudulent intent.

"24. Mattie May Stalcup sold the land back to her father, R. C. Gates, for exactly what she gave for it.

"25. During the time plaintiff and defendant Mattie May Stalcup farmed the land together they divided the crops.

"26. Plaintiff never paid or offered to pay or made tender of any part of the mortgage when the mortgage came due.

"27. Defendant R. C. Gates saw the plaintiff working upon the real estate in controversy herein.

"29. Plaintiff never personally paid anything to R. C. Gates on the purchase price of said real estate; the payments made by plaintiff for interest and taxes are enumerated in finding No. 11.

"31. Defendant Mattie May Stalcup was unable to pay the mortgage at the time it came due.

"32. R. C. Gates has paid interest on the five thousand dollar mortgage which he orally assumed.

"33. R. C. Gates saw the plaintiff working on the real estate in controversy herein; also saw the plaintiff working on other land of Mrs. Mattie May Stalcup.

"35. Mattie May Stalcup never paid R. C. Gates any part of the one thousand dollars mentioned in finding No. 4."

The following is the conclusion of law made by the trial court:

"The court concludes as a matter of law that the deed from Mattie May Stalcup to R. C. Gates should not be set aside, and that defendant Mattie May Stalcup should not be decreed and declared to be a trustee for plaintiff of an undivided one-half interest, or of any interest, in the real estate involved herein; and judgment goes for the defendants, and the relief asked for by plaintiff should be and hereby is denied."

The first and main question involved in this controversy is, whether or not the defendant R. C. Gates was an innocent purchaser of the land from his daughter, taking it back for the same price for which he had sold it to her two and one-half years before, and without knowing or having notice of the claimed interest of the plaintiff in the land.

The court finds that he had no knowledge or notice of such interest until after his purchase thereof, and a careful examination of the evidence shows there was sufficient evidence to support such finding, although there is some evidence to the contrary and many circumstances which are urged as being sufficient to have put a prudent man upon his inquiry, among which were the farming of the land regularly by the plaintiff and his brother, the payment of half the interest regularly and one time by check signed by the plaintiff and sent directly to him and indorsed by him. Appellant insists that the payment of interest and taxes on land by one other than the record owner should be sufficient to put the purchaser upon inquiry. But the farming and handling of their financial affairs

together by the plaintiff and his brother would not make this conduct as noticeable as if the payments had been made by one not otherwise connected in work and business with the record owner and her husband; likewise with the circumstances of possession. Plaintiff was in possession of this land in a way, but with his brother. They were both seen on the land frequently by defendant Gates, and such possession, in order to put one upon inquiry, should have been exclusive. In the case of *Penrose v. Cooper*, 86 Kan. 597, 121 Pac. 1103, it was held that possession the notice of which will put the purchaser upon inquiry must be open, notorious and exclusive. The fact that the plaintiff and his brother worked together on this land after it was purchased in 1928 would not indicate anything different as to ownership than on the other land owned by Mrs. Stalcup. In *Beaubien v. Hindman*, 38 Kan. 471, 16 Pac. 796, it was said—

"In order for mere possession of real estate to put a purchaser upon inquiry, the party claiming possession must have actual, open, visible, notorious and exclusive possession of the premises." (p. 472.)

As to findings of fact being conclusive, if there is evidence to support them, it was said in *Wideman v. Faivre*, 100 Kan. 102, 163 Pac. 619:

"Rule followed that where questions of fact have been determined by the trial court upon substantial and competent evidence, such determination is conclusive on appeal." (Syl. ¶ 2.)

Appellant argues very forcibly the rules as to resulting trusts and insists that the statute of frauds urged by the appellee is not applicable under the circumstances of this case, citing *Duncan v. Johnson*, 89 Kan. 21, 130 Pac. 655, where it was said:

"When two parties purchase a tract of land for their mutual profit and the consideration is paid by one of them and the deed made to him with the verbal agreement that he is to hold for both unless other arrangements are subsequently made, the statute of frauds does not preclude an action by the other party to be adjudged the owner of an undivided one-half of the land, and for an accounting." (Syl. ¶ 3.)

Under the findings of the trial court as to the relation of the plaintiff and Mrs. Stalcup with reference to the purchase of this land by her with the use or investment of the funds she owed the plaintiff, and her subsequent recognition of his interest in the land and her offers to convey a half interest therein to him, a conclusion as to her being a trustee for him might have been reached while she still

held the title, although the findings show he never fully paid his part of the obligation for the purchase thereof. But no good purpose is served by speculating or reasoning along this line when the title to the land has been transferred to an innocent purchaser.

"No such trust, whether implied or created, shall defeat the title of the purchaser for a valuable consideration and without notice of the trust." (R. S. 67-402.)

The good faith of the purchaser is all that is required to fully dispose of the land and place it beyond the reach of the daughter, sought by the plaintiff to be made a trustee for his half interest therein. Quite a little of the argument and the supporting authorities of the appellant would have been apparently conclusive in an action against the daughter while she still owned the land, but they are not availing when the object of the trust is beyond her reach.

In the trial court appellant moved to set aside certain of the findings of fact for the reason that they were contrary to and not supported by the evidence. The adverse ruling of the trial court on that motion is assigned as error. We have carefully examined the evidence and find some evidence to support each of such findings.

In the brief of appellant our attention is directed to apparent inconsistencies in some of the findings, but a possible construction of them as one being a modification of the other is suggested and is quite reasonable. When they are all read together there appears to be no serious conflict between them.

Appellant concludes his brief with two earnest appeals to this court to protect him in his evident loss by the conduct of Mrs. Stalcup, who owed him $3,000 and now claims she owes him nothing, by our directing the trial court to render judgment against defendant R. C. Gates for $3,000 to be paid appellant and defendant Gates to be relieved of that amount in meeting his promise, not yet performed, in paying off the $5,000 mortgage on the daughter's land. The other appeal is to relieve the plaintiff of the costs and tax them to the daughter. It is true this is an equity case, and these appeals may sound equitable, but costs usually follow the judgment, even in equity cases, and we must have from the trial court a basis on which to rest a modified judgment, however equitable the proposed modification may appear to be. We have no such basis here.

We find no error in the proceedings. The judgment is affirmed.