In re CASCADE OIL COMPANY,
INC., Debtor.

D & F PETROLEUM, et al., Plaintiffs,

v.

CASCADE OIL COMPANY, INC., et
al., Defendants.

OFFICIAL CREDITORS' COMMITTEE,
Cross Plaintiffs,

v.

Larry KIRKLAND, et al.,
Cross Defendants.

Bankruptcy No. 82–10635.
Adv. No. 83–0205.

United States Bankruptcy Court,
D. Kansas.

July 8, 1986.

Gerald Lasswell, Stinson, Lasswell & Wilson, Wichita, Kan., Gerald F. Munitz, Chicago, Ill., for debtor.

Mark A. Weisbart, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex., Michael L. Jones, Hershberger, Patterson, Jones & Roth, Wichita, Kan., for Creditors' Committee.

G. Gordon Atcheson, Hall, Turner & Pike, Chartered, Wichita, Kan., for Investors.

Roger M. Sherwood, Sherwood, Hensley & Harper, Wichita, Kan., for D & F Petroleum, Kermit Oursler and Paul Fiacco.

Bruce B. Fitts, Wichita, Kan., for Kirklands.

William A. Bonwell, Jr., Wichita, Kan., Special Master.

## MEMORANDUM OF DECISION

JOHN K. PEARSON, Bankruptcy Judge.

This adversary proceeding is before the Court upon the joint motion of the debtor and Official Unsecured Creditors' Committee for partial summary judgment with respect to certain individual defendants in the above captioned adversaries. Hereafter the Court will refer to "the Committee", "the debtor" and "the Kirklands" as such and the various purchasers of working interest shares as the "investors".[1] The Court recognizes that the label "investor" may not reflect the position of all such purchasers, but adopts that label for convenience in reference.

### A: PROCEDURAL BACKGROUND

This adversary was originally commenced by D & F Petroleum, Kermit Oursler, and Paul Fiacco against the debtor and a number of individuals and entities in 1983. An amended complaint followed very quickly and the debtor and the Committee filed separate answers. Ultimately the debtor and the Committee joined in an amended answer and counter- or cross-claim against the other defendants.[2] It appears that the various claims have been brought sufficiently into focus for the Court to consider the motions and set the various adversaries for trial on a number

1. The investors so referred to are Pat Mercier, Joe and Angela Stepner, Ralph W. Anderson, Buck Oil Company, Dennis E. Buchanan, Alfred Buchanan, Ernest Villanueva, Robert E. Holmes, Dominic Mannio, Michael Mann McCleskey, K. Chrysanthia Naverud, George and Gertrude Rashak, Les Sutherland Construction, Inc. and Leonard F. Winegar.

2. The debtor is the nominal cross- or counter-plaintiff although the Committee has taken the lead in prosecuting these actions on behalf of the debtor. No question has been raised as to the Committee's standing to bring these motions.

of claims for relief including, but not limited to the following:

1. D & F Petroleum, Kermit Oursler and Paul Fiacco (hereafter "D & F, Oursler and Fiacco"), seek a determination that each has an interest in an oil and gas lease generally known as the "Vestring Lease."[3]

2. Cascade Oil Company (the "debtor"), joined by the Committee, seeks to avoid the claims of virtually all of the other claimants, record or otherwise, to the Vestring Lease under various provisions of 11 U.S.C. §§ 544(a)(3), 547, 548 and 549:

    a. The "investors",[4] who claim an interest in the Vestring Lease by virtue of an assignment dated January 19, 1982, and recorded on September 7, 1982, after the petition for relief herein.

    b. Larry and Lonnie Kirkland (hereinafter "the Kirklands"), former officers and directors of the debtor corporation, claim an overriding royalty interest in the Vestring Lease by virtue of an assignment dated August 25, 1981, recorded June 10, 1982, after the petition for relief.

    c. Patrick Mercier (hereinafter "Mercier"), who claims an overriding royalty interest in the Vestring Lease by virtue of an assignment dated August 25, 1981, recorded June 10, 1982, after the filing of the petition for relief.

    d. Paul Bell (hereinafter "Bell"), a former employee of the debtor corporation, who claims a portion of the working interest (the amount is apparently in dispute) by virtue of an assignment recorded April 20, 1982, but modified by virtue of a "stipulation" recorded August 16,

3. The validity of that lease is the subject of separate litigation set for trial the same week as this matter. The Court will not lengthen the opinion by setting out the legal description or the various claims in the other adversary.

4. Although some of the investor group share common counsel, separate answers have been filed by at least two groups of the individuals who claim working interests in the Vestring Lease.

1982, and settlement ultimately approved by this Court.

e. D & F and Oursler who claim an interest by virtue of an assignment dated September 25, 1981, but recorded June 8, 1982, after the petition for relief herein.

3. The debtor and the Committee have filed a motion for summary judgment against the investors, Lonnie Kirkland and Pat Mercier. The balance of the adversary is now set for trial beginning July 22, 1986.

## B: SUMMARY OF RULING

For the reasons hereinafter set out, the Court grants the Committee's motions with respect to the investor group, Lonnie Kirkland and Pat Mercier and directs entry of judgment against the investors, Lonnie Kirkland and Pat Mercier, individually, and in favor of the debtor and Committee, setting aside the post-petition transfer to the individual investors, Lonnie Kirkland and Pat Mercier of any interest in the working interest of the Vestring Lease.

The parties' positions with respect to this litigation are not surprising. The investors, Mr. Kirkland and Mr. Mercier (presumably) assert that the trustee's avoiding powers under § 544(a)(3) are limited by the provisions of § 541(d).[5] Not surprisingly, the Creditors' Committee advances the position that the debtor's § 544 powers are separate and apart from the § 541 property rights and not dependent or in any way limited thereby.

## C: FINDINGS OF FACT

From reading the investors' pleadings and the balance of the file, the Court concludes that there are no genuine disputes as to the following material facts:

1. The debtor was engaged in drilling oil and gas wells in Central Kansas prior to the filing of its petition for relief.

2. In April 1980, four members of the Vestring family granted an oil and gas lease to Robert Vestring on 640 acres of land located in Chase County, Kansas known as "the Vestring Lease". Robert Vestring, in turn, assigned that lease to the debtor, reserving an overriding royalty interest in addition to the usual landowner's interest.

3. In late 1979, the investors individually contracted for the purchase of the working interest in a drilling program marketed by the debtor under the title of "The Chase 16 Program." Under the terms of that offering, each investor was allowed to purchase, for $24,000.00, a five percent interest in the working interest of the Chase 16 Lease.[6]

4. The Chase 16 Program required that the debtor drill 16 wells on the Chase 16 Lease and refund a prorata share of the invested money for each well which was not commercial and not completed.

5. The debtor could not complete 16 commercial wells on the original Chase 16 Lease and apparently decided to transfer to the investors similar interests in other leases in lieu of refunding their money under the program agreement.[7] Pursuant to the debtor's decision, the debtor assigned the investors various interests in a lease known as the "Carlson Lease" located in Marion County, Kansas on December 1, 1980.

9. The investors, other than their initial payments to the debtor in 1979, made no further investment in or payments to the debtor in exchange for the assignment of interests in the Carlson and Vestring leases.

5. All statutory references hereafter are to the Bankruptcy Code Title 11, United States Code.

6. At least two of the investors purchased a ten percent interest. Ralph Anderson and Dennis Buchanan of the current investor group purchased their present interest from one of the original investors, James Pope.

7. It is not clear from the record now before the Court whether that decision was reduced to writing. Whether that decision resulted in an enforceable contract is also in question. However, it is clear, as alleged by the investors that a decision was made to make the transfers and that the debtor made some transfers to the investors of interests in other leases not at issue here, purportedly in satisfaction of that refund right.

10. Lonnie Kirkland and Pat Mercier, respectively, claim a .025859375% and a .015625% overriding royalty interest in the Vestring Lease based on an assignment executed August 25, 1981, but recorded June 10, 1982.[8]

### D: CONCLUSIONS OF LAW

11. The Court has jurisdiction over the subject matter and parties and venue is proper in Kansas.

12. The debtor, in its capacity as trustee under the Bankruptcy Code, is entitled to recover for the estate any property of which it was record owner as of the date of the petition, May 7, 1982, and which was thereafter transferred without court approval irrespective of the date of execution of the assignment effecting that transfer.

### E: DISCUSSION

### I. THE STANDARD ON MOTION FOR SUMMARY JUDGMENT.

As noted by counsel for the investors, in order to grant a motion for summary judgment, the Court must conclude from the file that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Bankr.P. Rule 7056, Fed.R.Civ.P. Rule 56. The burden placed upon the moving party is heavy and the party opposing the motion for summary judgment is entitled to have the evidence viewed in the light most favorable to its position and the benefit of every inference which may reasonably be drawn from the evidence. *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The operative facts are not in dispute: as of the date the debtor filed its petition for relief under the Bankruptcy Code, the investors and Lonnie Kirkland had no interest of record in the working interest of the Vestring Lease. Accordingly, under 11

U.S.C. § 544, the debtor is entitled to summary judgment as a matter of law.

### II. DEBTOR–IN–POSSESSION'S AVOIDING POWERS.

To further a fundamental underlying purpose of bankruptcy proceedings, a trustee in bankruptcy not only succeeds to the property interests of the debtor as of the date of the petition, but also is given certain "strong arm" powers and the right to recover fraudulent and preferential transfers made by the debtor. *See* §§ 541, 544, 547 and 548. While there are certain statutory limits set forth by § 546 upon those recovery rights, they do not apply in this situation. Additionally, a debtor-in-possession may exercise all of the rights and powers of a trustee in bankruptcy. *See* § 1107.

■ Because the bankruptcy law evolved initially as a creditor remedy, a fundamental principle of bankruptcy law requires that all unsecured creditors be treated essentially alike in bankruptcy. Where possible, the Bankruptcy Code should be construed to harmonize with that principle.

### III. RELATIONSHIP OF POWERS.

As of the petition date, May 7, 1982, the majority of the record title to the working interest in the Vestring Lease was in the debtor.[9] See Special Master's report filed April 5, 1985, File Document No. 733. On that day the assignments to the investors, the Kirklands, and Pat Mercier were unrecorded.

While the debtor clearly succeeded to its property as debtor-in-possession under § 541, the questions before the Court are whether the debtor's interest in the Vestring Lease was subject to any claim by the investors and, if so, whether the debtor-in-possession as trustee may avoid those interests under § 544(a)(3).

---

**8.** Larry Kirkland claims a similar interest by virtue of that assignment. It appears that the Committee has merely overlooked him in filing its motion.

**9.** For the purposes of this opinion, the Court will assume that the investors, Lonnie Kirkland and Pat Mercier had a right to the assignments specifically enforceable against the debtor, prepetition.

The Court concludes that §§ 541 and 544 involve separate aspects of the trustee's rights and powers and § 544(a)(3) allows the debtor as trustee to avoid any claim the investors, Lonnie Kirkland and Pat Mercier may hold to the Vestring Lease.

The Court is primarily persuaded by the analysis of §§ 541 and 544 set out in *In re Great Plains Western Ranch Co., Inc.,* 38 B.R. 899 (Bankr.C.D.Cal.1984). In that case Judge Ayer carefully reviewed both §§ 541 and 544 and their antecedents in the Bankruptcy Act of 1898 and concluded that some equitable limits were imposed upon the property to which a debtor trustee succeeded under § 541, but that any equitable claims could be avoided under § 544(a)(3).

Great Plains, a limited partnership, had record title to two ranches in Mississippi and Texas upon the filing of its Chapter 11 in California. The limited partners asserted rights in the land under various theories, including a constructive trust. While assuming the fraud necessary to support the imposition of a constructive trust, Judge Ayer concluded that the trustee's powers under § 544(a)(3) allowed Great Plains to avoid any claim of the limited partners under constructive trust principles or otherwise. Particularly persuasive is Judge Ayer's analysis of the evolution of the strong arm powers under the Bankruptcy Act of 1898. Judge Ayer rather succinctly summarized his conclusions as follows:

> Even conceding that the property rights of the estate are derivative from the property rights of the debtor, still the trustee enjoys additional powers quite independent of his powers under Section 541, and in no way derivative from the debtor's rights at state law. Failure to consider Section 544 together with Section 541 may lead to misleading generalizations and sometimes to unsound results. [citations omitted.]

38 B.R. at 905. Judge Ayer went on to discuss the specific evolution of § 544(a) and the addition of § 544(a)(3) under the Bankruptcy Reform Act of 1978.

A brief analysis of the language of the two sections suggests that Congress intended to create two separate bases for the trustee taking action with respect to property. Section 541 provides in part:

(a) The commencement of a case ... creates an estate. Such estate is comprised of all of the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

Section 544(a) provides in part:

(a) The trustee shall have, ... the rights and powers of ...

> (3) a bona fide purchaser of real property, ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, while under § 541, the trustee succeeds to the rights of the debtor in any property of the debtor, under § 544 the trustee acquires any real property that a bona fide purchaser from the debtor could acquire on the date of the petition. The latter is broader language. Although there are only minor differences in the language of the two sections, they support the conclusion that the rights under § 544 are separate from and equal to, not subordinate to, the rights under § 541.

The Court must also consider the holding of the United States District Court for this District in *In re Harter, Inc.,* 31 B.R. 1015 (D.Kan.1983) that the § 544(a)(3) powers are independent of any rights under § 541. In that case, the district court adopted a bankruptcy court opinion upon review thereof under the emergency rules in effect in late 1983. The bankruptcy court was called upon to construe, not the interrelationship of §§ 541 and 544, but rather the language of § 544. The contestants in that case involved the principal officer of

the debtor, Harter, Inc., and the Chapter 11 trustee who was seeking to evict the principal from a condominium. The principal held an unrecorded deed from the debtor. The court rejected the principal's position that the § 544(a)(3) powers were subject to notice of his rights by virtue of his dual position as principal and grantee under the deed from the corporation. The district court apparently did not consider whether there was an interrelationship between §§ 541 and 544.[10] The court concluded that the trustee's powers under § 544(a)(3) overcame any right the principal had under the unrecorded deed.

Other courts have considered the interrelationship and adopted a rule whereby the § 544 powers were limited to "property of the estate" under § 541 and held that the trustee takes subject to the rights of equitable title holders. For example in *Mahan & Rowsey, Inc.*, 37 B.R. 530 (Bankr.W. D.Okla.1984), the court held that an overriding royalty interest holder, whose assignments were not of record, was entitled to assignments of the interests and that the trustee could not avoid the equitable interest under § 544(a)(3). The court there, however, seems to have misread § 544 stating that the section speaks of "property of the estate" and concluding that property which is held in trust is not property of the estate. That language does not appear in § 544, but rather in § 541.

In *In the Matter of Quality Holstein Leasing*, 752 F.2d 1009, the Fifth Circuit concluded that § 544 does not empower a trustee to retain, for the benefit of the estate, property which was acquired through the debtor's fraud. The court stated generally that § 541(d) prevails over the trustee's strong arm powers in the situation where state law impresses property with a constructive trust in favor of another party. In the specific case, however, the court went on to hold that a

creditor of the alleged beneficiary of the purported constructive trust was not entitled to assert the beneficiary's rights against the trustee. *See also In re Earl Roggenbuck Farms, Inc.*, 51 B.R. 913 (Bankr.E.D.Mich.N.D.1985).

The difficulty with a constructive trust theory is, of course, that the "trust" is neither a trust nor constructive, but is a device created by the courts to prevent injustice. *In re First Capital Mortgage Loan Corporation*, 60 B.R. 915 (1986); *In re North American Coin & Currency, Ltd.*, 767 F.2d 1573 (9th Cir.1985). It has the effect in bankruptcy, if applied, of preferring one creditor over another on the basis of equitable principles. The same equitable principles, however, dictate that in bankruptcy all unsecured creditors be treated essentially alike.

As the court in *First Capital, supra,* noted: " ... in dealing with fraud-based applications of the constructive trust doctrine, the court must be mindful of the basic bankruptcy policy of treating general creditors equally." And the Ninth Circuit in *North American Coin, supra,* stated: "We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws."

█ The Court is persuaded that construing § 544(a)(3) to be limited to property owned outright under § 541 would be fundamentally unsound. Moreover, a number of courts have concluded that the trustee's § 544(a)(3) powers take precedence over any limitations imposed by § 541(d) on the trustee's interest in property. *See In the matter of International Bullion Exchange, Inc.*, 60 B.R. 261 (S.D.Fla.1986); *In re Marino*, 49 B.R. 600 (N.D.Cal.1985);

---

**10.** However, upon Motion for Reconsideration the District Court in an unpublished opinion noted that under Kansas law a bona fide purchaser takes free and clear of the rights of someone claiming under a constructive trust. The court further noted that it need not address the constructive trust argument, as the trustee would take free of any such trust as a bona fide purchaser under § 544(a)(3). *In re Harter,* Case No. 80–12005 (1/4/84) [available on WESTLAW, DCTU database] (Kelly, J.), citing *Stalcup v. Stalcup,* 137 Kan. 141, 19 P.2d 447 (1933).

*In re General Coffee Corp.*, 41 B.R. 781 (Bankr.S.D.Fla.1984); *In re Elrod*, 42 B.R. 468 (Bankr.Tenn.1984). *Compare In re Curry*, 57 B.R. 224 (Bankr.M.D.La.1986).

## IV. THE RIGHTS OF A BONA FIDE PURCHASER.

Under § 544(a)(3), the trustee has the rights of a bona fide purchaser of real property from the debtor. The Court must look thus to Kansas law to determine what rights a bona fide purchaser from the debtor would have acquired in the Vestring Lease as of the date of the petition.

In so doing, the Court must venture into the thicket surrounding oil and gas interests under Kansas law.

The Court concludes that under Kansas law and for the purposes of determining the rights of a bona fide purchaser under both Kansas law and § 544 of the Bankruptcy Code, the working interests held by the debtor as the date of the petition in the Vestring Lease constitutes an interest in real property.[11] Perhaps the leading case on oil and gas interests in Kansas in recent years is *Ingram v. Ingram*, 214 Kan. 415, 521 P.2d 254 (1974). In that case the court had to deal with a contest between an attaching creditor, the debtor's ex-wife, and a bank which claimed a lien on certain oil and gas interests. The bank derived its position from a mortgage filed and recorded with the register of deeds as a mortgage on real estate interests. The wife contended that the failure to perfect the lien under the Uniform Commercial Code was fatal to the bank's position and that she was entitled to levy on the debtor's leases. In a lengthy and complicated opinion the court concluded that the bank had a senior claim to the leases stating:

We have concluded that the legislature has determined that oil and gas leasehold interests are to be treated as *real prop-*

erty under the statutes pertaining to recording of instruments conveying or affecting real estate. We have already mentioned K.S.A. 55–210 pertaining to the enforcement of all kinds of liens and mortgages on leaseholds for oil and gas purposes. They are to be enforced and foreclosed in the same manner as may be provided by law for enforcing liens and mortgages against real estate except that after sale of the property there shall be no redemption. Furthermore in 1953 the legislature by amendment of G.S. 1949, 67–221 specifically included oil and gas leases under the statutes which govern the recording of instruments affecting real estate.

*Id.* at 420–21, 521 P.2d 254. (Emphasis in original.) The court further quoted from K.S.A. 58–2221:

"Recordation of instruments conveying or affecting real estate; duties of register of deeds. Every instrument in writing that conveys real estate, *any estate or interest created by an oil and gas lease*, or whereby any real estate may be affected, proved or acknowledged, and certified in the manner hereinbefore prescribed, may be recorded in the office of register of deeds of the county in which such real estate is situated: ..." (Emphasis supplied by the court in *Ingram.*)

214 Kan. at 421, 521 P.2d 254. While the opinion notes in several places that under Kansas law an oil and gas interest is a hybrid property interest to be considered personal property for some purposes and real property for others, the Court is compelled here to conclude that, for the purposes of the Bankruptcy Code and specifically for the purposes of § 544(a)(3), the debtor's interest in the working interest of an oil and gas lease is to be treated as real property.

Since oil and gas interests under Kansas law fit in more than one category, depending on the purpose of the classification it is not impossible to conclude that the Oklahoma bankruptcy court was treating a separate aspect of oil and gas leases and thus is not inconsistent with this opinion.

---

11. The Court has considered the decision of the Oklahoma bankruptcy court in *In re J & H Land and Cattle Company*, 8 B.R. 237 (Bankr.W.D. Okla.1981). It appears that case may be distinguished from the present circumstances since the Court was considering whether the interest at issue was a rejectable executory contract.

This position is supported by an older circuit opinion, *Riverview State Bank v. Ernest,* 198 F.2d 876 (10th Cir.1952). In that case the appellate court reversing the district court held that a bank's lien recorded in the real estate records was properly and validly a lien on the debtor's interest in an oil and gas lease.

Having concluded that the debtor's interest in the Vestring Lease constitutes a real property interest for the purposes of § 544, the Court must then determine the rights of a bona fide purchaser of that interest under Kansas law. Kansas law on the subject has been settled for years.

In Kansas a bona fide purchaser takes free of any unrecorded conveyance. *See In re Southworth,* 22 B.R. 376 (Bankr.D. Kan.1982); *Smith v. Worster,* 59 Kan. 640, 54 P. 676 (1898); K.S.A. 58–2223. Further, a bona fide purchaser takes free and clear of any interest of a beneficiary under a purported constructive trust. *Stalcup v. Stalcup,* 137 Kan. 141, 19 P.2d 447 (1933)

Under Kansas law the debtor-in-possession as trustee in this case, takes whatever interest in real estate the trustee acquires free and clear of the claims of anyone holding an unrecorded assignment. As noted above, the investors, Lonnie Kirkland and Pat Mercier had no record interest in the Vestring Leases as of the date of the petition in bankruptcy. Under these circumstances, the Court is compelled to conclude that as a matter of law under § 544(a)(3) the debtor is entitled to judgment.

## F: CONCLUSION

The trustee or as in this case the debtor-in-possession, pursuant to its status as bona fide purchaser under § 544(a)(3) is entitled to avoid the assignments to the "investors", Lonnie Kirkland and Pat Mercier, all of which were unrecorded on the date the petition for relief was filed.

A separate order will be entered giving effect to the determinations reached herein.